**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

ENTERED
07/21/2016

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CJ HOLDING CO., *et al.*,[1] | ) | Case No. 16-33590 (DRJ) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | **Re: Docket No. 17** |

**INTERIM ORDER (I) AUTHORIZING DEBTORS**
**(A) TO OBTAIN POSTPETITION FINANCING PURSUANT TO**
**11 U.S.C. §§ 105, 361, 362, 363(b), 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1) AND 364(e)**
**AND (B) TO UTILIZE CASH COLLATERAL PURSUANT TO 11 U.S.C. § 363, (II)**
**GRANTING ADEQUATE PROTECTION TO PREPETITION SECURED PARTIES**
**PURSUANT TO 11 U.S.C. §§ 361, 362, 363, 364 AND 507(b) AND (III) SCHEDULING**
**FINAL HEARING PURSUANT TO BANKRUPTCY RULES 4001(b) AND (c)**

(Docket No. 17)

Upon the motion (the "**Motion**"),[2] dated July 20, 2016, of C&J Energy Services Ltd.

("**CJES**" or the "**Parent Borrower**"), CJ Holding Co. (the "**U.S. Borrower**" and, together with

the Parent Borrower, the "**Borrowers**") and the direct and indirect subsidiaries of the Borrowers

that are debtors and debtors-in-possession in the above-captioned cases (collectively with the

Borrowers in their capacity as a guarantor of the other Borrower's obligations, the

"**Guarantors**"; the Guarantors collectively with the Borrowers, the "**Debtors**" or the "**Loan**

**Parties**"), pursuant to sections 105, 361, 362, 363(b), 363(c)(2), 364(c)(1), 364(c)(2), 364(c)(3),

364(d)(1), 364(e) and 507 of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number (if any), are:  CJ Holding Co. (4586); Blue Ribbon Technology, Inc. (6338); C&J Corporate Services (Bermuda) Ltd.; C&J Energy Production Services-Canada Ltd.; C&J Energy Services, Inc. (3219); C&J Energy Services Ltd.; C&J Spec-Rent Services, Inc. (0712); C&J VLC, LLC (9989); C&J Well Services, Inc. (5684); ESP Completion Technologies LLC (4615); KVS Transportation, Inc. (2415); Mobile Data Technologies Ltd.; Tellus Oilfield Inc. (2657); Tiger Cased Hole Services, Inc. (7783); and Total E&S, Inc. (5351).  The location of the Debtors' service address is 3990 Rogerdale, Houston, Texas 77042.

[2]     Capitalized terms used, but not defined herein, shall have the meanings set forth in the DIP Documents (as defined below).

"**Bankruptcy Code**"), and Rules 2002, 4001, 6004 and 9014 of the Federal Rules of Bankruptcy

Procedure (the "**Bankruptcy Rules**"), the Bankruptcy Local Rules for the Southern District of

Texas (the "**Local Bankruptcy Rules**") and the Procedures for Complex Chapter 11 Bankruptcy

Cases (the "**Complex Case Rules**") promulgated by the United States Bankruptcy Court for the

Southern District of Texas (the "**Court**"), seeking, among other things:

(a)    authorization for the Borrowers to obtain secured postpetition financing (the "**DIP Financing**"), and for the Guarantors to guaranty the Borrowers' obligations in connection with the DIP Financing, consisting of a superpriority senior secured delayed-draw term loan facility (the "**DIP Facility**") in an aggregate principal amount of up to $100 million, with Cortland Capital Market Services LLC, acting as administrative agent and collateral agent (in such capacities, the "**DIP Agent**"), and the DIP Lenders (as defined below), all on the terms and conditions set forth in this Interim Order and the DIP Documents (each as defined below), pursuant to which DIP Facility the Borrowers are authorized, on an interim basis, to forthwith borrow from the DIP Lenders up to an aggregate principal amount on the Effective Date (as defined in the DIP Credit Agreement (as defined below)) not to exceed $25 million;

(b)    authorization for the Loan Parties to execute, deliver, and enter into the Superpriority Secured Debtor-in-Possession Credit Agreement to be dated on or around July 26, 2016, among the Borrowers, the other Guarantors party thereto, the lenders from time to time party thereto (the "**DIP Lenders**" and, together with the DIP Agent, the "**DIP Secured Parties**"), and the DIP Agent, substantially in the form attached to this Interim Order as <u>Exhibit 1</u> (as amended, supplemented or otherwise modified from time to time in accordance with the terms hereof and thereof, the "**DIP Credit Agreement**" and, together with the schedules and exhibits attached thereto and all agreements, documents, instruments and/or amendments executed and delivered in connection therewith, including, without limitation, the U.S. Security Agreement, dated as of the Effective Date, among the Loan Parties and the DIP Agent (as amended, supplemented or otherwise modified from time to time in accordance with the terms hereof and thereof, the "**DIP Security Agreement**"), the "**DIP Documents**") and the other DIP Documents and to perform all such other and further acts as may be required in connection with the DIP Documents;

(c)    the granting of adequate protection in the form of Adequate Protection Obligations (as defined below) solely to the Prepetition Agent and the Prepetition Lenders (each as defined below) under or in connection with (i) that certain Credit Agreement, dated as of March 24, 2015, by and among CJES, the U.S. Borrower, CJ Lux Holdings S.à.r.l., the other Debtors and non-Debtor subsidiaries of CJES party thereto, the lenders from time to time party thereto (collectively, in such capacities, the "**Prepetition Lenders**") and Cortland Capital Market Services

LLC, as successor Administrative Agent (in such capacity and, as applicable, together with Bank of America, N.A. as predecessor thereto, the "**Prepetition Agent**" and, together with the Prepetition Lenders, the "**Prepetition Secured Parties**") (as amended by that certain First Amendment to Credit Agreement dated as of March 24, 2015,  the Waiver and Second Amendment to Credit Agreement, dated as of September 29, 2015 and the Third Amendment (Refinancing Amendment) to Credit Agreement dated as of September 29, 2015, and as further modified pursuant to that certain Temporary Limited Waiver Agreement, dated as of May 10, 2016, that certain Forbearance Agreement, dated as of May 31, 2016 and that certain Second Forbearance Agreement, dated as of June 30, 2016, and as otherwise amended, supplemented or otherwise supplemented or otherwise modified prior to the date hereof, the "**Prepetition Credit Agreement**"), (ii) that certain U.S. Security Agreement, entered into in connection with the Prepetition Credit Agreement and dated as of March 24, 2015 (as amended, supplemented or otherwise modified prior to the date hereof, the "**U.S. Security Agreement**"), (iii) those certain pledge or security agreements, duly executed by certain of the Foreign Loan Parties (as defined in the Prepetition Credit Agreement) in connection with the Credit Agreement, governed by the laws of the jurisdiction in which such Foreign Loan Party is organized (or, in the case of any Foreign Loan Party organized in Canada, by the laws of the jurisdiction where the pledged assets are located (as applicable) or as otherwise agreed among the parties thereto) (any such non-U.S. law governed security agreement, as amended, supplemented or otherwise modified prior to the date hereof, each a "**Foreign Security Agreement**," and collectively, the "**Foreign Security Agreements**") and (iv) such other mortgages and agreements and documentation executed in connection with the Prepetition Credit Agreement (collectively, with the Prepetition Credit Agreement, the U.S. Security Agreement and the Foreign Security Agreements, the "**Prepetition Loan Documents**"), whose liens and security interests in respect of the Debtors are being primed by the DIP Liens (as defined below);

(d)     authorization for the Loan Parties to continue to use Cash Collateral (as defined below) subject to the restrictions set forth in the DIP Documents and this Interim Order and all other Prepetition Collateral (as defined below) in which the Prepetition Secured Parties have an interest, and the granting of adequate protection to the Prepetition Secured Parties with respect to, *inter alia*, such use of their Cash Collateral and the other Prepetition Collateral;

(e)     subject to certain challenge rights of the Debtors and other parties in interest set forth herein, approval of certain stipulations by the Debtors with respect to the Prepetition Loan Documents and the liens and security interests arising therefrom;

(f)     the grant of superpriority administrative claims pursuant to section 364(c)(1) of the Bankruptcy Code to the DIP Secured Parties payable from, and secured by liens pursuant to section 364(c)(2) and 364(c)(3) of the Bankruptcy Code and priming liens pursuant to section 364(d)(1) of the Bankruptcy Code on, all prepetition and postpetition property of the Loan Parties' estates (other than the

Excluded Property (as defined in the DIP Documents)) and all proceeds thereof (including, subject only to and effective upon entry of the Final Order (as defined below), any Avoidance Proceeds (as defined below)), subject only to the Carve-Out (as defined below);

(g)    subject only to and effective upon entry of the Final Order, the waiver of the Debtors' right to surcharge the Prepetition Collateral and the Collateral (as defined below) pursuant to section 506(c) of the Bankruptcy Code and any right of the Debtors under the "equities of the case" exception in section 552(b) of the Bankruptcy Code;

(h)    modification of the automatic stay to the extent set forth herein and in the DIP Documents;

(i)    pursuant to Bankruptcy Rule 4001, that an interim hearing (the "**Interim Hearing**") on the Motion be held before this Court to consider entry of an order granting the Motion on an interim basis (this "**Interim Order**"); and

(j)    that this Court schedule a final hearing (the "**Final Hearing**") to be held within forty (40) calendar days of the entry of this Interim Order to consider entry of a final order (the "**Final Order**") approving the relief granted herein on a final basis and authorizing the Borrower to forthwith borrow from the DIP Lenders under the DIP Documents up to the balance of the amount of the DIP Financing and the Guarantors to guaranty all obligations owing to the DIP Lenders under the DIP Documents;

and due and appropriate notice of the Motion, the relief requested therein and the Interim Hearing having been served by the Debtors on (i) the Office of the United States Trustee for the Southern District of Texas ("**U.S. Trustee**"), (ii) the holders of the 30 largest unsecured claims against the Debtors on a consolidated basis, (iii) Davis Polk & Wardwell LLP and Diamond McCarthy LLP as counsel to the DIP Agent and the Prepetition Agent, (iv) Milbank, Tweed, Hadley & McCloy LLP and Haynes and Boone, LLP as counsel to Nabors Industries Ltd., (v) the Internal Revenue Service, (vi) the Securities and Exchange Commission, (vii) the United States Attorney's Office for the Southern District of Texas, (viii) the Environmental Protection Agency, (ix) the office of the attorneys general for the states in which the Debtors operate, and (x) any party that has requested notice pursuant to Bankruptcy Rule 2002 and it appearing that no other or further notice need be provided; and the Court having reviewed the Motion; and the

Interim Hearing having been held by this Court on July 21, 2016; and the relief requested in the Motion being in the best interests of the Debtors, their creditors and their estates and all other parties-in-interest in the Cases (as defined below); and the Court having determined that the relief requested in the Motion is necessary to avoid immediate and irreparable harm; and the Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and upon the record made by the Debtors in the Motion, *Declaration of Stephen Hannan in Support of the Emergency Motion of CJ Holding Co.,* et al., *for Entry of Interim and Final Orders (I) Authorizing the Debtors to Obtain Postpetition Secured Financing, (II) Granting Liens and Providing Superpriority Administrative Expense Claims, (III) Authorizing the Use of Cash Collateral, (IV) Granting Adequate Protection, (V) Modifying the Automatic Stay, (VI) Scheduling a Final Hearing, and (VII) Granting Related Relief* (the "**Hannan Declaration**"), the *Declaration of Mark Cashiola in Support of the Debtors' Chapter 11 Petitions and First Day Motions* (the "**First Day Declaration**"), and at the Interim Hearing and after due deliberation and sufficient cause appearing therefor;

IT IS FOUND, DETERMINED, ORDERED AND ADJUDGED, that:

1.      *Disposition.*  The relief requested in the Motion is granted on an interim basis in accordance with the terms of this Interim Order.  ~~Any objections to the Motion with respect to the entry of this Interim Order that have not been withdrawn, waived or settled, and all reservations of rights included therein, are hereby denied and overruled on the merits.~~  This Interim Order shall become effective immediately upon its entry. *Nothing in this Interim Order approves or authorizes the Debtors to enter into or perform under the DIP Facility,*

2.      *Jurisdiction.*  This Court has core jurisdiction over the Cases, this Motion, and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157(b) and 1334.  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

*or makes any findings with respect to the DIP Facility. And all parties' rights are reserved with respect to relief sought in the ~~Motion~~ as it relates to the DIP Facility.*

5

3.      *Notice*.  Proper, timely, adequate and sufficient notice of the Motion has been provided in accordance with the Bankruptcy Code, the Bankruptcy Rules, the Complex Case Rules and the Local Bankruptcy Rules, and no other or further notice of the Motion or the entry of this Interim Order shall be required, except as set forth in paragraph 33 below. The interim relief granted herein is necessary to avoid immediate and irreparable harm to the Debtors and their estates pending the Final Hearing.

4.      *Debtors' Stipulations*.  Without prejudice to the rights of the Debtors, as and to the extent such rights are set forth in paragraph 16 below, or any other party in interest, (but subject to the limitations thereon contained in paragraphs 16 and 17 below) the Debtors admit, stipulate and agree that:

(a)      (i) as of the date (the "**Petition Date**") of the filing of the Debtors' chapter 11 cases (the "**Cases**"), the Debtors were justly and lawfully indebted and liable to the Prepetition Secured Parties, without defense, counterclaim or offset of any kind, in the aggregate principal amount of not less than (1) $284,400,000 in respect of loans made and $15,140,000 in respect of letters of credit, in each case issued under the Revolving Facility (as defined in the Prepetition Credit Agreement), (2) $569,250,000 in respect of loans made as the Initial Tranche B-1 Term Loans (as defined in the Prepetition Credit Agreement) and (3) $480,150,000 in respect of loans made as the Initial Tranche B-2 Term Loans (as defined in the Prepetition Credit Agreement), in each case pursuant to, and in accordance with the terms of, the Prepetition Credit Agreement and the other Prepetition Loan Documents, plus accrued and unpaid interest thereon and fees, expenses (including any attorneys', accountants', appraisers' and financial advisors' fees, in each case, that are chargeable or reimbursable under the Prepetition Loan Documents), charges, indemnities and other obligations incurred in connection therewith (whether arising

before or after the Petition Date) (including, without limitation, obligations with respect to any Secured Cash Management Agreement or Secured Hedge Agreement (as each term is defined in the Prepetition Credit Agreement)) as provided in the Prepetition Loan Documents (collectively, the "**Prepetition Secured Debt**"), which Prepetition Secured Debt has been guaranteed on a joint and several basis by all of the Guarantors; (ii) the Prepetition Secured Debt constitutes the legal, valid and binding obligations of the Borrowers and the Guarantors, enforceable in accordance with its terms (other than in respect of the stay of enforcement arising from section 362 of the Bankruptcy Code); and (iii) no portion of the Prepetition Secured Debt or any payments made to the Prepetition Secured Parties or applied to or paid on account of the obligations owing under the Prepetition Loan Documents prior to the Petition Date is subject to any contest, attack, rejection, recovery, recoupment, reduction, defense, counterclaim, offset, subordination, recharacterization, avoidance or other claim, cause of action or other challenge of any nature under the Bankruptcy Code or applicable non-bankruptcy law;

(b)    the liens and security interests granted to the Prepetition Secured Parties (the "**Prepetition Liens**") pursuant to and in connection with the Prepetition Credit Agreement and the other Prepetition Loan Documents: (i) are legal, valid, binding, perfected, enforceable, first-priority liens and security interests in the collateral described in the Prepetition Loan Documents (the "**Prepetition Collateral**"); (ii) were granted to, or for the benefit of, the Prepetition Secured Parties for fair consideration and reasonably equivalent value; (iii) are not subject to avoidance, recharacterization, subordination, recovery, attack, effect, counterclaim, defense or Claim under the Bankruptcy Code or applicable non-bankruptcy law; and (iv) as of the Petition Date (prior to giving effect to the DIP Loans (as defined below) and the Carve-Out (as defined below) to which the DIP Liens are subject) are subject and subordinate only to valid,

7

perfected and unavoidable liens permitted under the Prepetition Credit Agreement and the Prepetition Loan Documents to the extent that such permitted liens are senior to or *pari passu* with the liens of the Prepetition Agent on the Prepetition Collateral;

(c)     none of the Prepetition Secured Parties control the Debtors or their properties or operations, have authority to determine the manner in which any Debtor's operations are conducted or are control persons or insiders of the Debtors by virtue of any of the actions taken with respect to, in connection with, related to or arising from the Prepetition Loan Documents;

(d)     the liens granted to the DIP Agent on behalf of the DIP Lenders pursuant to this Interim Order and the DIP Documents shall be perfected, valid, enforceable and non-avoidable liens and security interests in the Collateral;

(e)     the Debtors and their estates have no claims or causes of action against, or with respect to, the Prepetition Secured Parties;

(f)     so long as this Interim Order, any Final Order, and the DIP Documents remain in full force and effect, effective as of the later of the expiration of the Challenge Period (as defined below) and the final, nonappealable resolution of any Challenges (as defined below) filed before the expiration of the Challenge Period, the Debtors hereby absolutely and unconditionally release and forever discharge and acquit the Prepetition Secured Parties and their respective Representatives (as defined below) (collectively, the "**Released Parties**") from any and all obligations and liabilities to the Debtors (and their successors and assigns) and from any and all claims, counterclaims, demands, debts, accounts, contracts, liabilities, actions and causes of action arising prior to the Petition Date (collectively, the "**Released Claims**") of any kind, nature or description, whether known or unknown, foreseen or unforeseen, liquidated or

unliquidated, arising in law or equity or upon contract or tort or under any state or federal law or otherwise, arising out of or related to (as applicable) the Prepetition Credit Agreement and the other Prepetition Loan Documents, the obligations owing and the financial obligations made thereunder, the negotiation thereof and of the deal reflected thereby, and the obligations and financial obligations made thereunder, in each case that the Debtors at any time had, now have or may have, or that their successors or assigns hereafter can or may have against any of the Released Parties for or by reason of any act, omission, matter, cause or thing whatsoever arising at any time on or prior to the date of this Interim Order, whether such Released Claims are matured or unmatured or known or unknown; and

> (g)     all cash, securities or other property of the Loan Parties (and the proceeds therefrom) as of the Petition Date, including, without limitation, all cash, securities or other property (and the proceeds therefrom) and other amounts on deposit or maintained by the Loan Parties in any account or accounts with any depository institution (collectively, the "**Depository Institutions**"), were subject to rights of set-off and, other than an Excluded Securities Account or an Excluded Deposit Account (as each is defined in the U.S. Security Agreement) of any Loan Party, valid, perfected, enforceable, first priority liens under the Prepetition Loan Documents and applicable law, for the benefit of the Prepetition Secured Parties.  All proceeds of the Prepetition Collateral (including cash on deposit at the Depository Institutions as of the Petition Date, securities or other property, whether subject to control agreements or otherwise, in each case that constitutes Prepetition Collateral) are "cash collateral" of the Prepetition Secured Parties within the meaning of section 363(a) of the Bankruptcy Code (the "**Cash Collateral**").

> 5.     *Findings Regarding the DIP Financing and Cash Collateral.*

(a)     Good and sufficient cause has been shown for the entry of this Interim Order.

(b)     The Loan Parties have an immediate need to obtain the DIP Financing and continue to use the Prepetition Collateral (including Cash Collateral) to permit, among other things, the orderly continuation of the operation of their businesses, to maintain business relationships with vendors, suppliers and customers, to make payroll, to make capital expenditures permitted by the DIP Credit Agreement, to satisfy other working capital and operational needs and to fund administration of the Cases, including, without limitation, payment of Allowed Professional Fees (as defined below).  The access of the Loan Parties to sufficient working capital and liquidity through the use of Cash Collateral and other Prepetition Collateral, incurrence of new indebtedness for borrowed money under the DIP Documents are necessary and vital to the preservation and maintenance of the going concern values of the Loan Parties and to a successful reorganization of the Loan Parties.

(c)     The Loan Parties are unable to obtain financing on more favorable terms from sources other than the DIP Lenders under the DIP Documents and are unable to obtain adequate unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense.  The Loan Parties are also unable to obtain secured credit allowable solely under sections 364(c)(1), 364(c)(2) and 364(c)(3) of the Bankruptcy Code without the Loan Parties granting to the DIP Agent and the DIP Lenders, subject to the Carve-Out, the DIP Liens and the Superpriority Claims (as defined below) and incurring the Adequate Protection Obligations, in each case, under the terms and conditions set forth in this Interim Order and in the DIP Documents.

(d)     Based on the Motion, the declarations filed in support of the Motion, and the record presented to the Court at the Interim Hearing, the terms of the DIP Financing as approved herein, the terms of the Adequate Protection Obligations granted to the Prepetition Secured Parties and the terms on which the Loan Parties may continue to use the Prepetition Collateral (including Cash Collateral) pursuant to this Interim Order and the DIP Documents are fair and reasonable, reflect the Loan Parties' exercise of prudent business judgment consistent with their fiduciary duties and constitute reasonably equivalent value and fair consideration.

(e)     To the extent such consent is required, the Prepetition Agent and Prepetition Secured Parties have consented to the Loan Parties' use of Cash Collateral and the other Prepetition Collateral, and the Loan Parties' entry into the DIP Documents in accordance with and subject to the terms and conditions in this Interim Order and the DIP Documents.  For the avoidance of doubt, this consent includes without limitation the granting of the DIP Liens on a priming basis under section 364(d)(1) of the Bankruptcy Code.

(f)     The DIP Financing as approved herein, as well as the terms of the Adequate Protection Obligations and Adequate Protection Liens, and the use of the Prepetition Collateral (including Cash Collateral) have been negotiated in good faith and at arm's length among the Loan Parties, the DIP Agent and the DIP Lenders and all of the Loan Parties' obligations and indebtedness arising under, in respect of, or in connection with, the DIP Financing and the DIP Documents, including, without limitation, (i) all loans made to and guarantees issued by the Loan Parties pursuant to the DIP Documents (the "**DIP Loans**") and (ii) any "**Obligations**" (as defined in the DIP Credit Agreement) of the Debtors permitted under the DIP Credit Agreement, in each case owing to the DIP Agent, any DIP Lender or any of their respective affiliates, in accordance with the terms of the DIP Documents, including any

11

obligations, to the extent provided for in the DIP Documents, to indemnify the DIP Agent or the DIP Lenders and to pay any fees, expenses (including any attorneys', accountants', appraisers' and financial advisors' fees that are chargeable or reimbursable under the DIP Documents), amounts, charges, costs, indemnities and other obligations that are chargeable or reimbursable under this Interim Order, the Final Order or the DIP Documents (all of the foregoing in clauses (i) and (ii) collectively, the "**DIP Obligations**"), shall be deemed to have been extended by the DIP Agent and the DIP Lenders and their respective affiliates in good faith, as that term is used in section 364(e) of the Bankruptcy Code and in express reliance upon the protections offered by section 364(e) of the Bankruptcy Code, and the DIP Agent and the DIP Lenders (and the successors and assigns thereof) shall be entitled to the full protection of section 364(e) of the Bankruptcy Code in the event that this Interim Order or any provision hereof is vacated, reversed or modified, on appeal or otherwise.

(g)     The Prepetition Secured Parties are entitled to the adequate protection provided in this Interim Order as and to the extent set forth herein pursuant to §§ 361, 362, 363 and 364 of the Bankruptcy Code.  Based on the Motion and on the record presented to the Court, the terms of the proposed adequate protection arrangements and of the use of the Prepetition Collateral (including the Cash Collateral) are fair and reasonable, reflect the Loan Parties' prudent exercise of business judgment and constitute reasonably equivalent value and fair consideration for the use of Cash Collateral; *provided, however,* that nothing in this Interim Order or the other DIP Documents shall (x) be construed as the affirmative consent by any of the Prepetition Secured Parties for the use of Cash Collateral, other than on the terms set forth in this Interim Order and in the context of the DIP Financing authorized by this Interim Order, (y) be construed as a consent by any party to the terms of any other financing or any other lien

12

encumbering the Prepetition Collateral (whether senior or junior), other than on the terms set forth in this Interim Order, or (z) prejudice, limit or otherwise impair the rights of any of the Prepetition Secured Parties, to seek new, different or additional adequate protection or assert the interests of any of the Prepetition Secured Parties.

(h)     The Debtors have requested immediate entry of this Interim Order pursuant to Bankruptcy Rules 4001(b)(2) and 4001(c)(2) and the Local Bankruptcy Rules. Absent granting the relief set forth in this Interim Order, the Loan Parties' estates will be immediately and irreparably harmed.  Consummation of the DIP Financing and the use of Prepetition Collateral, including Cash Collateral, in accordance with this Interim Order and the DIP Documents are therefore in the best interests of the Loan Parties' estates and consistent with the Loan Parties' exercise of their fiduciary duties.

6.     *Authorization of the DIP Financing and the DIP Documents.*

(a)     The Loan Parties are hereby authorized to execute, enter into and perform all obligations under the DIP Documents.  The Borrowers are hereby authorized to forthwith borrow money pursuant to the DIP Credit Agreement, and the Guarantors are hereby authorized to guaranty the Borrowers' obligations with respect to such borrowings, up to an aggregate principal amount equal to $100 million under the DIP Facility (plus interest, fees, prepayment premiums, original issue discount, expenses (including professional fees and expenses) and other amounts, in each case, as provided for in the DIP Documents), subject to any limitations on borrowing under the DIP Documents, which shall be used for all purposes permitted under the DIP Documents (and subject to the terms and conditions set forth herein and therein), including, without limitation, to provide working capital for, and for other general corporate purposes of, the Loan Parties, including the payment of expenses of administration in the Cases.

(b)      In furtherance of the foregoing and without further approval of this Court, each Debtor is authorized to perform all acts, to make, execute and deliver all instruments and documents (including, without limitation, the execution or recordation of security agreements, mortgages and financing statements), and to pay all fees that may be reasonably required or necessary for the Loan Parties' performance of their obligations under or related to the DIP Financing, including, without limitation:

(i)      the execution and delivery of, and performance under, each of the DIP Documents;

(ii)      the execution and delivery of, and performance under, one or more amendments, waivers, consents or other modifications to and under the DIP Documents, in each case, in such form as the Loan Parties, the DIP Agent and the requisite DIP Lenders may agree, it being understood that no further approval of the Court shall be required for authorizations, amendments, waivers, consents or other modifications to and under the DIP Documents (and any fees and other expenses (including any attorneys', accountants', appraisers' and financial advisors' fees), amounts, charges, costs, indemnities and other obligations paid in connection therewith) that do not shorten the maturity of the extensions of credit thereunder or increase the aggregate commitments or the rate of interest payable thereunder;

(iii)      the non-refundable payment to the DIP Agent or the DIP Lenders, as the case may be, of all fees, including, without limitation, any original issue discount, commitment fee, prepayment fee or agency fee (which fees shall be, and shall be deemed to have been, approved upon entry of this Interim Order and upon payment thereof, shall not be subject to any contest, attack, rejection, recoupment, reduction, defense, counterclaim, offset, subordination, recharacterization, avoidance or other claim, cause of action or other challenge of

any nature under the Bankruptcy Code, under applicable non-bankruptcy law or otherwise) and any amounts due (or that may become due) in respect of the indemnification obligations, in each case referred to in the DIP Credit Agreement (and in any separate letter agreements between any or all Loan Parties, on the one hand, and the DIP Agent and/or DIP Lenders, on the other, in connection with the DIP Financing) and the costs and expenses as may be due from time to time, including, without limitation, fees and expenses of the professionals retained by any of the DIP Agent or DIP Lenders, in each case, as provided for in the DIP Documents, without the need to file retention motions or fee applications or to provide notice to any party; and

        (iv)    the performance of all other acts required under or in connection with the DIP Documents, including the granting and perfection of the DIP Liens and the Superpriority Claims as permitted herein and therein.

        (c)    Upon execution and delivery of the DIP Documents and entry of this Interim Order, the DIP Documents shall constitute valid, binding and unavoidable obligations of the Loan Parties, enforceable against each Loan Party party thereto in accordance with the terms of the DIP Documents and this Interim Order.  No obligation, payment, transfer or grant of security under the DIP Documents or this Interim Order to the DIP Agent and/or the DIP Lenders shall be stayed, restrained, voidable or recoverable under the Bankruptcy Code or under any applicable law (including, without limitation, under sections 502(d), 548 or 549 of the Bankruptcy Code, any applicable Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act or other similar state statute or common law), or subject to any defense, reduction, setoff, recoupment, recharacterization, subordination, disallowance, impairment, cross-claim, claim or counterclaim.

7.      *Superpriority Claims.*

(a)      Pursuant to section 364(c)(1) of the Bankruptcy Code, all of the DIP

Obligations shall constitute allowed superpriority administrative expense claims against the Loan

Parties (without the need to file any proof of claim) with priority over any and all administrative

expenses, diminution in value claims (including all Adequate Protection Obligations) and all

other claims against the Loan Parties, now existing or hereafter arising, of any kind whatsoever,

including, without limitation, all administrative expenses of the kind specified in sections 503(b)

and 507(b) of the Bankruptcy Code and any and all administrative expenses or other claims

arising under sections 105, 326, 328, 330, 331, 365, 503(b), 506(c) (subject to entry of the Final

Order), 507(a), 507(b), 726, 1113 or 1114 of the Bankruptcy Code (including the Adequate

Protection Obligations), whether or not such expenses or claims may become secured by a

judgment lien or other non-consensual lien, levy or attachment, which allowed claims (the

"**Superpriority Claims**") shall for purposes of section 1129(a)(9)(A) of the Bankruptcy Code be

considered administrative expenses allowed under section 503(b) of the Bankruptcy Code, and

which Superpriority Claims shall be payable from and have recourse to all pre- and postpetition

property of the Loan Parties and all proceeds thereof, including, without limitation, any and all

cash and Cash Collateral of the Loan Parties (whether maintained with the DIP Agent or

otherwise) and any investment of such cash and Cash Collateral, inventory, accounts receivable,

other rights to payment whether arising before or after the Petition Date (including, without

limitation, post-petition intercompany claims against the Loan Parties and their non-Debtor

affiliates), contracts, properties, plants, fixtures, machinery, equipment, general intangibles,

documents, instruments, securities, chattel paper, interests in leaseholds, real properties, deposit

accounts, patents, copyrights, trademarks, trade names, rights under license agreements, other

16

intellectual property, capital stock of subsidiaries, wherever located, and the proceeds, products,
rents, and profits of all the foregoing, whether arising under section 552(b) of the Bankruptcy
Code or otherwise (excluding Avoidance Actions (as defined below) but including, effective
upon entry of the Final Order, Avoidance Proceeds), subject only to the payment of the Carve-
Out.  The Superpriority Claims shall be entitled to the full protection of section 364(e) of the
Bankruptcy Code in the event that this Interim Order or any provision hereof is vacated, reversed
or modified, on appeal or otherwise.

      (b)     For purposes of this Interim Order, "**equipment**" shall include, without
limitation, drilling platforms, trailers of the Debtors including tandem axle trailers, blender
trailers, transport trailers, gooseneck trailers, hydration trailers, pump trailers, single axle trailers,
sand bin trailers, sand belt trailers, and tri-axle trailers and well service rigs, contract drilling rigs
and any other onshore or offshore rigs, and remotely operated vehicles, trenchers, and other
equipment used by any Debtor for the provision of construction services, well operations
services, oil and gas production services, contract drilling services or other services, vehicles,
motor vehicles, rolling stock, vessels, and any manuals, instructions, blueprints, computer
software (including software that is imbedded in and part of the equipment) and similar items
which relate to the above, together with all parts thereof and all accessions and additions thereto.

      (c)     For purposes of this Interim Order, the "**Carve-Out**" means the sum of (i)
all fees required to be paid to the Clerk of the Court and to the Office of the United States
Trustee under section 1930(a) of title 28 of the United States Code plus interest at the statutory
rate (without regard to the notice set forth in (iii) below); (ii) all reasonable fees and expenses up
to $50,000 incurred by a trustee under section 726(b) of the Bankruptcy Code (without regard to
the notice set forth in (iii) below); (iii) to the extent allowed at any time, whether by interim

order, procedural order, or otherwise, all unpaid fees and expenses (the "**Allowed Professional Fees**") incurred by persons or firms retained by the Debtors pursuant to section 327, 328, or 363 of the Bankruptcy Code (the "**Debtor Professionals**") and the official committee of unsecured creditors appointed in the Cases, if any (the "**Creditors' Committee**") pursuant to section 328 or 1103 of the Bankruptcy Code (together with the Debtor Professionals, the "**Professional Persons**") at any time before or on the first business day following delivery by the DIP Agent of a Carve-Out Trigger Notice (as defined below), whether allowed by the Court prior to or after delivery of a Carve-Out Trigger Notice; and (iv) Allowed Professional Fees of Professional Persons in an aggregate amount not to exceed $4 million incurred after the first business day following delivery by the DIP Agent of the Carve-Out Trigger Notice, to the extent allowed at any time, whether by interim order, procedural order, or otherwise (the amounts set forth in this clause (iv) being the "**Post-Carve-Out Trigger Notice Cap**").  For purposes of the foregoing, "**Carve-Out Trigger Notice**" shall mean a written notice delivered by email (or other electronic means) by the DIP Agent to the Debtors, their co-restructuring counsel, the U.S. trustee, and counsel to the Creditors' Committee, which notice may be delivered following the occurrence and during the continuation of an Event of Default (as defined in the DIP Credit Agreement) and acceleration of the DIP Facility, stating that the Post-Carve-Out Trigger Notice Cap has been invoked.

(d)     On the day on which a Carve-Out Trigger Notice is given by the DIP Agent to the Debtors with a copy to counsel to the Creditors' Committee (the "**Termination Declaration Date**"), the Carve-Out Trigger Notice shall (i) be deemed a draw request and notice of borrowing by the Borrowers for DIP Loans under the commitments to make such DIP Loans (the "**DIP Commitments**") (on a pro rata basis based on the then outstanding DIP

Commitments), in an amount equal to the then unpaid amounts of the Allowed Professional Fees (any such amounts actually advanced shall constitute DIP Loans) and (ii) also constitute a demand to the Borrowers to utilize all cash on hand as of such date and any available cash thereafter held by any Debtor to fund a reserve in an amount equal to the then unpaid amounts of the Allowed Professional Fees. The Debtors shall deposit and hold such amounts in a segregated account in trust to pay such then unpaid Allowed Professional Fees (the "**Pre-Carve-Out Trigger Notice Reserve**") prior to any and all other claims. On the Termination Declaration Date, the Carve-Out Trigger Notice shall also be deemed a request by the Debtors for DIP Loans under the DIP Commitment (on a pro rata basis based on the then outstanding DIP Commitments), in an amount equal to the Post-Carve-Out Trigger Notice Cap (any such amounts actually advanced shall constitute DIP Loans). The Debtors shall deposit and hold such amounts in a segregated account in trust to pay such Allowed Professional Fees benefiting from the Post-Carve-Out Trigger Notice Cap (the "**Post Carve-Out Trigger Notice Reserve**" and, together with the Pre-Carve-Out Trigger Notice Reserve, the "**Carve-Out Reserves**") prior to any and all other claims. On the first business day after the DIP Agent gives such notice to such DIP Lenders, notwithstanding anything herein to the contrary, including with respect to the existence of a Default or Event of Default, the failure of the Debtors to satisfy any or all of the conditions precedent for DIP Loans under the DIP Facility, any termination of the DIP Commitments following an Event of Default, or the occurrence of the Stated Maturity Date (as defined in the DIP Credit Agreement), each DIP Lender with an outstanding DIP Commitment (on a pro rata basis based on the then outstanding DIP Commitments) shall make available to the DIP Agent such DIP Lender's pro rata share with respect to such borrowing in accordance with the DIP Facility. All funds in the Pre-Carve-Out Trigger Notice Reserve shall be used first to pay the

obligations set forth in clauses (i) through (iii) of the definition of Carve-Out set forth above (the "**Pre-Carve-Out Amounts**"), but not, for the avoidance of doubt, the Post-Carve-Out Trigger Notice Cap, until paid in full, and then, to the extent the Pre Carve-Out Trigger Notice Reserve has not been reduced to zero, to pay the DIP Agent for the benefit of the DIP Lenders, unless the DIP Facility has been indefeasibly paid in full in cash and all DIP Commitments have been terminated, in which case any such excess shall be paid to the Prepetition Secured Parties in accordance with their rights and priorities as of the Petition Date.  All funds in the Post-Carve-Out Trigger Notice Reserve shall be used first to pay the obligations set forth in clause (iv) of the definition of Carve-Out set forth above (the "**Post-Carve-Out Amounts**"), and then, to the extent the Post Carve-Out Trigger Notice Reserve has not been reduced to zero, to pay the DIP Agent for the benefit of the DIP Lenders, unless the DIP Facility has been indefeasibly paid in full in cash and all DIP Commitments have been terminated, in which case any such excess shall be paid to the Prepetition Secured Parties in accordance with their rights and priorities as of the Petition Date.  Notwithstanding anything to the contrary in this Interim Order, if either of the Carve-Out Reserves is not funded in full in the amounts set forth herein, then, any excess funds in one of the Carve-Out Reserves following the payment of the Pre-Carve-Out Amounts and Post-Carve-Out Amounts, respectively, shall be used to fund the other Carve-Out Reserve, up to the applicable amount set forth herein, prior to making any payments to the DIP Agent or the Prepetition Secured Parties, as applicable.  Notwithstanding anything to the contrary in this Interim Order, following delivery of a Carve-Out Trigger Notice, the DIP Agent and the Prepetition Secured Parties shall not sweep or foreclose on cash (including cash received as a result of the sale or other disposition of any assets) of the Debtors until the Carve-Out Reserves have been fully funded, but shall have a security interest in any residual interest in the Carve-Out

Reserves, with any excess paid to the DIP Agent for application in accordance with this Interim Order.  Further, notwithstanding anything to the contrary in this Interim Order, (i) disbursements by the Debtors from the Carve-Out Reserves shall not constitute DIP Loans or increase or reduce the DIP Facility, (ii) the failure of the Carve-Out Reserves to satisfy in full the Allowed Professional Fees shall not affect the priority of the Carve-Out, and (iii) in no way shall the Initial Rolling Budget (as defined in the DIP Credit Agreement), Rolling Budget (as defined in the DIP Credit Agreement), Carve-Out, Post-Carve-Out Trigger Notice Cap, Carve-Out Reserves, or any of the foregoing be construed as a cap or limitation on the amount of the Allowed Professional Fees due and payable by the Debtors.  For the avoidance of doubt and notwithstanding anything to the contrary herein or in the Prepetition Credit Agreement, the DIP Documents, the Carve-Out shall be senior to all liens and claims securing the DIP Facility or the Prepetition Secured Debt, and any and all other forms of adequate protection, liens, or claims securing the DIP Facility or the Prepetition Secured Debt.

(e)     Any payment or reimbursement made prior to the occurrence of the Termination Declaration Date in respect of any Allowed Professional Fees shall not reduce the Carve-Out.

(f)     Any payment or reimbursement made on or after the occurrence of the Termination Declaration Date in respect of any Allowed Professional Fees shall permanently reduce the Carve-Out on a dollar-for-dollar basis.  Any funding of the Carve-Out shall be added to, and made a part of, the DIP Facility secured by the Collateral and shall be otherwise entitled to the protections granted under this Interim Order, the Final Order, the Bankruptcy Code, and applicable law.

8.     *DIP Liens*.  As security for the DIP Obligations, effective and perfected upon the date of this Interim Order and without the necessity of the execution, recordation of filings by the Loan Parties of mortgages, security agreements, control agreements, pledge agreements, financing statements or other similar documents, any notation of certificates of title for a titled good, or the possession or control by the DIP Agent of, or over, all owned or hereafter acquired assets and property of the Loan Parties (including, without limitation, inventory, accounts receivable, property, plant, equipment, rights under leases and other contracts, patents, copyrights, trademarks, tradenames and other intellectual property and capital stock of subsidiaries) and the proceeds thereof, other than the Excluded Property (the foregoing, together with any other property identified in clauses (a), (b) and (c) below being referred to collectively, as the "**Collateral**"), the following security interests and liens are hereby granted to the DIP Agent for its own benefit and the benefit of the DIP Lenders, subject only to the payment of the Carve-Out (all such liens and security interests granted to the DIP Agent, for its benefit and for the benefit of the DIP Lenders, pursuant to this Interim Order and the DIP Documents, the "**DIP Liens**"):

(a)     First Lien On Unencumbered Property.  Pursuant to section 364(c)(2) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected first priority senior security interest in and lien upon all tangible and intangible pre- and postpetition property of each Loan Party, whether existing on the Petition Date or thereafter acquired, that, on or as of the Petition Date, is not subject to a valid, perfected and non-avoidable lien (collectively, "**Unencumbered Property**"), including, without limitation, any and all unencumbered cash of the Loan Parties (whether maintained with the DIP Agent or otherwise) and any investment of such cash and cash collateral, inventory, accounts receivable, other rights to payment whether

22

arising before or after the Petition Date (including, without limitation, post-petition intercompany claims against the Loan Parties and their non-Debtor affiliates), contracts, properties, plants, fixtures, machinery, equipment, general intangibles, documents, instruments, securities, chattel paper, interests in leaseholds, real properties, deposit accounts, patents, copyrights, trademarks, trade names, rights under license agreements and other intellectual property, capital stock of subsidiaries, wherever located, and the proceeds, products, rents and profits of the foregoing, whether arising under section 552(b) of the Bankruptcy Code or otherwise, of all the foregoing, in each case other than: (i) the Excluded Property, but including any proceeds of the Excluded Property that do not otherwise constitute Excluded Property; and (ii) the Loan Parties' claims and causes of action under sections 502(d), 544, 545, 547, 548 and 550 of the Bankruptcy Code, or any other avoidance actions under the Bankruptcy Code (collectively, "**Avoidance Actions**"), but subject only to and effective upon entry of the Final Order, including any proceeds or property recovered, unencumbered or otherwise from Avoidance Actions, whether by judgment, settlement or otherwise ("**Avoidance Proceeds**");

> (b)      Liens Priming Prepetition Secured Parties' Liens.  Pursuant to section 364(d)(1) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected first priority senior priming security interest in and lien upon all pre- and postpetition property of each Loan Party (including, without limitation, any and all cash and cash collateral (whether maintained with the DIP Agent or otherwise) and any investment of such cash and cash collateral, inventory, accounts receivable, other rights to payment whether arising before or after the Petition Date (including, without limitation, post-petition intercompany claims against the Loan Parties and their non-Debtor affiliates), contracts, properties, plants, fixtures, machinery, equipment, general intangibles, documents, instruments, securities, chattel paper, interests in

leaseholds, real properties, deposit accounts, patents, copyrights, trademarks, trade names, rights under license agreements and other intellectual property, capital stock of subsidiaries, wherever located, and the proceeds, products, rents and profits of the foregoing), whether now existing or hereafter acquired, that is subject to the existing Prepetition Liens, which lien shall be senior in all respects to such Prepetition Liens.  Such security interests and liens shall be senior in all respects to the interests in such property of the Prepetition Secured Parties arising from current and future liens of the Prepetition Secured Parties (including, without limitation, the Adequate Protection Liens) (collectively, the "**Primed Liens**") and to any liens and security interests to which such Primed Liens are senior or *pari passu*;

> (c)     <u>Liens Junior to Certain Other Liens</u>.  Pursuant to section 364(c)(3) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected security interest in and lien upon all tangible and intangible pre- and postpetition property of each Loan Party (including, without limitation, any and all cash and cash collateral of the Loan Parties (whether maintained with the DIP Agent or otherwise) and any investment of such cash and cash collateral, inventory, accounts receivable, other rights to payment whether arising before or after the Petition Date (including, without limitation, post-petition intercompany claims against the Loan Parties and their non-Debtor affiliates), contracts, properties, plants, fixtures, machinery, equipment, general intangibles, documents, instruments, securities, chattel paper, interests in leaseholds, real properties, deposit accounts, patents, copyrights, trademarks, trade names, rights under license agreements and other intellectual property, capital stock of subsidiaries, wherever located, and the proceeds, products, rents and profits of the foregoing, whether arising under section 552(b) of the Bankruptcy Code or otherwise, in each case other than (x) the Excluded Property, but including any proceeds of Excluded Property that do not constitute Excluded

24

Property and (y) the Avoidance Actions, but, subject only to and effective upon entry of the Final Order, including any Avoidance Proceeds) immediately junior to (i) any valid, perfected and unavoidable liens in existence immediately prior to the Petition Date that are permitted under the Prepetition Loan Documents to the extent such permitted liens are senior or *pari passu* to the Prepetition Liens, and (ii) any such valid and unavoidable permitted liens in existence immediately prior to the Petition Date that are perfected subsequent to the Petition Date as permitted by section 546(b) of the Bankruptcy Code, in each case above other than the security interests and liens securing the Prepetition Secured Debt (including, without limitation, the Adequate Protection Liens); *provided*, that nothing in the foregoing clauses (i) and (ii) shall limit the rights of the DIP Secured Parties under the DIP Documents to the extent such liens are not permitted thereunder; and

> (d)      Liens Senior to Certain Other Liens.  The DIP Liens shall not be (i) subject or subordinate to (A) any lien or security interest that is avoided and preserved for the benefit of the Loan Parties and their estates under section 551 of the Bankruptcy Code, (B) unless otherwise provided for in the DIP Documents or in this Interim Order (including paragraphs 8(c) and 13(a)), any liens or security interests arising after the Petition Date, including, without limitation, any liens or security interests granted in favor of any federal, state, municipal or other foreign or domestic governmental unit (including any regulatory body), commission, board or court for any liability of the Loan Parties, or (C) any intercompany or affiliate liens or security interests of the Loan Parties; or (ii) subordinated to or made *pari passu* with any other lien or security interest under section 363 or 364 of the Bankruptcy Code.

Notwithstanding the foregoing, excluded from the foregoing grant of DIP Liens is any right, title and interest of any Loan Party in and to any (i) Real Property (as defined in the DIP

Credit Agreement) improved by a Building or Manufactured (Mobile) Home and no such property shall be Collateral under this Interim Order to the extent and for so long as the Flood Zone Requirements with respect to such property has not been satisfied to the satisfaction of each federally regulated DIP Lender and (ii) Real Property constituting a one-to four-family residential property.  For purposes of this Interim Order, "**Flood Laws**" means (i) the National Flood Insurance Act of 1968 as now or hereafter in effect or any successor statute thereto, (ii) the Flood Disaster Protection Act of 1973 as now or hereafter in effect or any successor statue thereto, (iii) the National Flood Insurance Reform Act of 1994 (amending 42 USC 4001, et seq.), as the same may be amended or recodified from time to time, and (iv) the Flood Insurance Reform Act of 2004 and any regulations promulgated thereunder.

9.     *Protection of DIP Lenders' Rights.*

(a)     So long as there are any DIP Obligations outstanding (other than contingent indemnity obligations as to which no claim has been asserted when all other DIP Obligations have been indefeasibly paid in full in cash and the DIP Commitments have been terminated) or the DIP Lenders have any outstanding DIP Commitments under the DIP Credit Agreement, the Prepetition Secured Parties shall: (i) have no right to and shall take no action to foreclose upon, or recover in connection with, the liens granted on the Prepetition Collateral thereto pursuant to the Prepetition Loan Documents or this Interim Order, or otherwise seek to exercise or enforce any rights or remedies against any Collateral or the Adequate Protection Liens; (ii) be deemed to have consented to any transfer, disposition or sale of, or release of liens on, any Collateral (but not any proceeds of such transfer, disposition or sale to the extent remaining after payment in cash in full of the DIP Obligations and termination of the DIP Commitments), to the extent such transfer, disposition, sale or release is authorized under the

26

DIP Documents; (iii) not file any further financing statements, trademark filings, copyright filings, mortgages, notices of lien or similar instruments, or otherwise take any action to perfect their security interests in any Collateral unless, solely as to this clause (iii), the DIP Agent or the DIP Lenders file financing statements or other documents to perfect the liens granted pursuant to this Interim Order, or as may be required by applicable state law to continue the perfection of valid and unavoidable liens or security interests as of the Petition Date and (iv) deliver or cause to be delivered, at the Debtors' cost and expense, any termination statements, releases and/or assignments in favor of the DIP Agent, the DIP Lenders or other documents necessary to effectuate and/or evidence the release, termination and/or assignment of liens on any portion of any Collateral subject to any sale or disposition.

(b)     To the extent the Prepetition Agent or any other Prepetition Secured Party has possession of any Prepetition Collateral or Collateral or has control with respect to any Prepetition Collateral or Collateral, or has been noted as secured party on any certificate of title for a titled good constituting Prepetition Collateral or Collateral, then such Prepetition Secured Party shall be deemed to maintain such possession or notation or exercise such control as a gratuitous bailee and/or gratuitous agent for perfection for the benefit of the DIP Agent and the DIP Lenders and shall comply with the instructions of the DIP Agent with respect to the exercise of such control and the DIP Agent agrees, and shall be deemed, without incurring any liability or duty to any party, to maintain possession or control of any Prepetition Collateral in its possession or control as gratuitous bailee and/or gratuitous agent for perfection for the benefit of the Prepetition Secured Parties.

(c)     The automatic stay provisions of section 362 of the Bankruptcy Code are hereby vacated and modified to the extent necessary to permit the DIP Agent and the DIP

Lenders to enforce all of their rights under the DIP Documents (including any cash dominion as provided for in the DIP Documents) and this Interim Order and (i) immediately upon the occurrence and during the continuance of an Event of Default, without further order of or application or motion to this Court, declare (A) the termination, reduction or restriction of any further DIP Commitment to the extent any such DIP Commitment remains (subject to the obligation to fund the Carve-Out Reserves) and (B) all Obligations to be immediately due and payable, without presentment, demand, protest, or other notice of any kind, all of which are expressly waived by the Loan Parties and (ii) unless the Court orders otherwise during the Remedies Notice Period (as defined below), upon the occurrence of an Event of Default and the giving of five business days' prior written notice (which shall run concurrently with any notice required to be provided under the DIP Documents) (the "**Remedies Notice Period**") via email to counsel to the Debtors, counsel to the Creditors' Committee, and the U.S. Trustee to exercise all other rights and remedies provided for in the DIP Documents and under applicable law.  In any hearing on any request to re-impose or continue the automatic stay of section 362(a) of the Bankruptcy Code, the only issue that may be raised by any party in opposition thereto shall be whether, in fact, an Event of Default has occurred and is continuing under the DIP Documents, and the Debtors and the Prepetition Secured Parties hereby waive their right to and shall not be entitled to seek relief, including, without limitation, under section 105 of the Bankruptcy Code, to the extent that such relief would in any way impair or restrict the rights and remedies of the DIP Agent or the DIP Lenders set forth in this Interim Order or the DIP Documents.  In no event shall the DIP Agent, the DIP Lenders or the Prepetition Secured Parties be subject to the equitable doctrine of "marshaling" or any similar doctrine with respect to the Collateral.  Further, subject only to and effective upon entry of the Final Order, in no event shall the "equities of the

case" exception in section 552(b) of the Bankruptcy Code apply to the secured claims of the Prepetition Secured Parties.

(d)     No rights, protections or remedies of the DIP Agent or the DIP Lenders granted by the provisions of this Interim Order or the DIP Documents shall be limited, modified or impaired in any way by: (i) any actual or purported withdrawal of the consent of any party to the Loan Parties' authority to continue to use Cash Collateral; (ii) any actual or purported termination of the Loan Parties' authority to continue to use Cash Collateral; or (iii) the terms of any other order or stipulation related to the Loan Parties' continued use of Cash Collateral or the provision of adequate protection to any party.

10.     *Limitation on Charging Expenses Against Collateral.*  Subject only to and effective upon entry of the Final Order and to the extent provided therein, except to the extent of the Carve-Out, no costs or expenses of administration of the Cases or any future proceeding that may result therefrom, including liquidation in bankruptcy or other proceedings under the Bankruptcy Code, shall be charged against or recovered from the Collateral (including Cash Collateral) pursuant to section 506(c) of the Bankruptcy Code or any similar principle of law, without the prior written consent of the DIP Agent (acting with the consent of the Required Lenders (as defined in the DIP Credit Agreement)) or the Prepetition Agent, and no such consent shall be implied from any other action, inaction, or acquiescence by the DIP Agent, the DIP Lenders or the Prepetition Agent or other Prepetition Secured Parties, and nothing contained in this Interim Order shall be deemed to be a consent by the DIP Agent, the DIP Lenders or the Prepetition Secured Parties to any charge, lien, assessment or claim against the Collateral under section 506(c) of the Bankruptcy Code or otherwise.

11.     *Payments Free and Clear.*  Subject only to the Carve-Out, any and all payments or proceeds remitted to the DIP Agent on behalf of the DIP Lenders pursuant to the provisions of this Interim Order or the Final Order or the DIP Documents shall be received free and clear of any claim, charge, assessment or other liability, including, without limitation, any such claim or charge arising out of or based on, directly or indirectly, section 506(c) of the Bankruptcy Code (subject to the entry of the Final Order approving the waiver of the Debtors' rights under section 506(c) of the Bankruptcy Code), whether asserted or assessed by, through or on behalf of the Debtors, or section 552(b) of the Bankruptcy Code or the equitable doctrine of marshaling.

12.     *Use of Cash Collateral.*  The Loan Parties are hereby authorized, subject to the terms and conditions of this Interim Order and the DIP Documents, to use all Cash Collateral and the Prepetition Secured Parties are directed promptly to turn over to the Loan Parties all Cash Collateral received or held by them; *provided* that (a) the Prepetition Secured Parties are granted the adequate protection as hereinafter set forth and (b) except on the terms and conditions of this Interim Order, the Loan Parties shall be enjoined and prohibited from at any times using the Cash Collateral absent further order of the Court.

13.     *Adequate Protection of Prepetition Secured Parties.*  The Prepetition Secured Parties are entitled, pursuant to sections 361, 362, 363(e), 364(d)(1) and 507 of the Bankruptcy Code, to adequate protection of their interests in the Prepetition Collateral, including the Cash Collateral, for and equal in amount to the aggregate diminution in the value of the Prepetition Secured Parties' prepetition security interests in all Prepetition Collateral from and after the Petition Date, if any, including, without limitation, any such diminution resulting from the sale, lease or use by the Loan Parties (or other decline in value) of the Prepetition Collateral, the priming of the Prepetition Secured Parties' security interests and liens in the Prepetition

Collateral by the DIP Agent and the DIP Lenders pursuant to the DIP Documents and this

Interim Order, and the imposition of the automatic stay pursuant to section 362 of the

Bankruptcy Code (the "**Prepetition Adequate Protection Claim**").  As adequate protection of

the Prepetition Adequate Protection Claim, the Prepetition Secured Parties are hereby granted the

following (collectively, the "**Adequate Protection Obligations**"):

(a)  Prepetition Secured Parties Adequate Protection Liens.  The Prepetition

Secured Parties are hereby granted (effective and perfected upon the date of this Interim Order

and without the necessity of the execution of any mortgages, security agreements, pledge

agreements, financing statements or other agreements), in the amount of the Prepetition

Adequate Protection Claim, a security interest in and lien upon all of the Collateral (including,

without limitation, Unencumbered Property and, subject to entry of the Final Order, Avoidance

Proceeds), subject and subordinate only to:  (i) the DIP Liens and any liens on the Collateral to

which the DIP Liens are junior; and (ii) the Carve-Out (the "**Adequate Protection Liens**").

(b)  Prepetition Secured Parties Section 507(b) Claim.  The Prepetition

Secured Parties are hereby granted, subject to the Carve-Out, a superpriority administrative claim

as provided for in section 507(b) of the Bankruptcy Code, junior to the Superpriority Claims (the

"**507(b) Claim**").  The 507(b) Claim shall have recourse to and be payable from all of the

Collateral including, without limitation, subject to entry of the Final Order, the Avoidance

Proceeds.  The 507(b) Claim shall be subject and subordinate only to the Carve-Out, the

Superpriority Claims granted in respect of the DIP Obligations and liens on the Collateral.

Except to the extent expressly set forth in this Interim Order or the DIP Credit Agreement, the

Prepetition Secured Parties shall not receive or retain any payments, property or other amounts in

respect of the 507(b) Claim unless and until the DIP Obligations (other than contingent

indemnification obligations as to which no claim has been asserted) and any claims having a priority superior to or *pari passu* with the Superpriority Claims have indefeasibly been paid in full in cash in accordance with the DIP Documents and the DIP Commitments have been terminated.

      (c)    <u>Prepetition Secured Parties Fees and Expenses</u>.  Without duplication of amounts required to be paid pursuant to the DIP Documents, (i) upon entry of this Interim Order, the Loan Parties shall pay in cash all reasonable and documented out-of-pocket professional fees and expenses payable to the advisors to the Prepetition Agent (including, without limitation, Davis Polk & Wardwell LLP, Diamond McCarthy LLP, FTI Consulting, Inc. and Moelis & Company) that have accrued as of the Petition Date promptly upon the receipt of invoices therefor and (ii) within ten calendar days of presentment of invoices  to the Debtors, counsel to the Creditors' Committee, if appointed, and the U.S. Trustee, the Loan Parties shall pay in cash all reasonable and documented out-of-pocket professional fees and expenses payable to the advisors to the Prepetition Agent (including, without limitation, Davis Polk & Wardwell LLP, Diamond McCarthy LLP, FTI Consulting, Inc. and Moelis & Company) that have accrued on or after the Petition Date, in each case, without any requirement to file any further application or other pleading, notice, or document with the Court for approval or payment of such fees, costs or expenses (or provide any time details).  In the event that within ten calendar days from receipt of such invoices the U.S. Trustee or counsel to the Creditors' Committee raises an objection, and the parties are unable to resolve any dispute regarding the fees and expenses included in such invoice, the Court shall hear and determine such dispute; *provided*, *however*, that payment of invoices shall not be delayed based on any such objections and the relevant professional shall

only be required to disgorge amounts objected to upon being "so ordered" pursuant to a final order of the Court.

(d)     Adequate Protection Milestones.  Failure to meet those certain case milestones set forth as of the date hereof in Section 6.21 of the DIP Credit Agreement (the "**Adequate Protection Milestones**") shall constitute a termination event with regard to the Debtors' consensual use of cash and other collateral of the Prepetition Lenders.

(e)     Reporting.  The Debtors shall promptly provide the Prepetition Agent with all required written financial reporting and other periodic reporting that is provided to the DIP Agent or the DIP Lenders.

(f)     The Adequate Protection Milestones and reporting obligations in subparagraphs (d) and (e) above shall survive any termination of the DIP Credit Agreement or the DIP Commitments thereunder.  Following any such termination of the DIP Credit Agreement or the DIP Commitments thereunder, the Adequate Protection Milestones may be waived, amended, modified or extended from time to time by the Required Lenders (as defined in the Prepetition Credit Agreement).

14.     *Perfection of DIP Liens and Adequate Protection Liens.*

(a)     The DIP Agent, the DIP Lenders and the Prepetition Secured Parties are hereby authorized, but not required, to file or record (and to execute in the name of the Loan Parties, as their true and lawful attorneys, with full power of substitution, to the maximum extent permitted by law) financing statements, trademark filings, copyright filings, mortgages, notices of lien or similar instruments in any jurisdiction, or take possession of or control over cash or securities, notate its name as secured party on any certificates of title for a titled good, or take any other action in order to validate and perfect the liens and security interests granted to them

hereunder.  Whether or not the DIP Agent, on behalf of the DIP Lenders or the Prepetition

Secured Parties shall, in their sole discretion, choose to file such financing statements, trademark

filings, copyright filings, mortgages, notices of lien or similar instruments, or take possession of

or control over any cash or securities, notate its name as secured party on any certificates of title

for a titled good, or otherwise confirm perfection of the liens and security interests granted to

them hereunder, such liens and security interests shall be deemed valid, perfected, allowed,

enforceable, non-avoidable and not subject to challenge, dispute or subordination, at the time and

on the date of entry of this Interim Order.  Upon the request of the DIP Agent, each of the

Prepetition Secured Parties and the Loan Parties, without any further consent of any party, is

authorized and directed to take, execute, deliver and file such instruments (in each case, without

representation or warranty of any kind) to enable the DIP Agent to further validate, perfect,

preserve and enforce the DIP Liens.  All such documents will be deemed to have been recorded

and filed as of the Petition Date.

    (b)  A certified copy of this Interim Order may, in the discretion of the DIP

Agent, be filed with or recorded in filing or recording offices in addition to or in lieu of such

financing statements, mortgages, notices of lien or similar instruments, and all filing offices are

hereby authorized and directed to accept such certified copy of this Interim Order for filing

and/or recording, as applicable.  For the avoidance of doubt, the automatic stay provisions of

section 362(a) of the Bankruptcy Code shall be modified to the extent necessary to permit the

DIP Agent to take all actions, as applicable, referenced in this subparagraph (b) and the

immediately preceding subparagraph (a).

15.     *Preservation of Rights Granted Under This Interim Order.*

(a)     Other than the Carve-Out and other claims and liens expressly granted by this Interim Order, no claim or lien having a priority superior to or *pari passu* with those granted by this Interim Order to the DIP Agent and the DIP Lenders or the Prepetition Secured Parties shall be granted or allowed while any of the DIP Obligations or the Adequate Protection Obligations remain outstanding, and, except as otherwise expressly provided in paragraphs 8 or 13(a) of this Interim Order, the DIP Liens and the Adequate Protection Liens shall not be: (i) subject or junior to any lien or security interest that is avoided and preserved for the benefit of the Loan Parties' estates under section 551 of the Bankruptcy Code; (ii) subordinated to or made *pari passu* with any other lien or security interest, whether under section 364(d) of the Bankruptcy Code or otherwise; (iii) subordinated to or made *pari passu* with any liens arising after the Petition Date including, without limitation, any liens or security interests granted in favor of any federal, state, municipal or other domestic or foreign governmental unit (including any regulatory body), commission, board or court for any liability of the Loan Parties; or (iv) subject or junior to any intercompany or affiliate liens or security interests of the Loan Parties.

(b)     The Debtors shall not seek, and it shall constitute an Event of Default and terminate the right of the Loan Parties to use Cash Collateral if any of the Loan Parties, without the prior written consent of the Required Lenders (as defined in both the DIP Credit Agreement and the Prepetition Credit Agreement), seeks, proposes or supports (whether by way of motion or other pleadings filed with the Court or any other writing executed by any Loan Party or by oral argument), or if there is entered or confirmed (in each case, as applicable): (i) any modifications, amendments or extensions of this Interim Order, and no such consent shall be implied by any other action, inaction or acquiescence by any party; (ii) an order converting or dismissing any of

the Cases; (iii) an order appointing a chapter 11 trustee in the Cases; (iv) an order appointing an examiner with enlarged powers in the Cases (beyond those set forth in sections 1106(a)(3) and (4) of the Bankruptcy Code); (v) a plan of reorganization other than an Acceptable Plan of Reorganization (as defined in the DIP Credit Agreement); or (vi) the sale of all or substantially all of the assets of the Loan Parties (except to the extent permitted under the DIP Documents), which does not provide for the repayment in full in cash of all DIP Obligations (other than any contingent indemnification or expense reimbursement obligations for which no claim has been made) upon the consummation thereof.  Notwithstanding any order that may be entered dismissing any of the Cases under section 1112 of the Bankruptcy Code or otherwise is at any time entered:  (i) the Superpriority Claims, the 507(b) Claims, the DIP Liens and the Adequate Protection Liens shall continue in full force and effect and shall maintain their priorities as provided in this Interim Order until all DIP Obligations and Adequate Protection Obligations shall have been indefeasibly paid in full in cash (and that such Superpriority Claims, 507(b) Claims, DIP Liens and Adequate Protection Liens shall, notwithstanding such dismissal, remain binding on all parties in interest); (ii) the other rights granted by this Interim Order shall not be affected; and (iii) this Court shall retain jurisdiction, notwithstanding such dismissal, for the purposes of enforcing the claims, liens and security interests referred to in this paragraph and otherwise in this Interim Order.

(c)      If any or all of the provisions of this Interim Order are hereafter reversed, modified, vacated or stayed, such reversal, modification, vacation or stay shall not affect: (i) the validity, priority or enforceability of any DIP Obligations or Adequate Protection Obligations incurred prior to the actual receipt of written notice by the DIP Agent or the Prepetition Agent, as applicable, of the effective date of such reversal, modification, vacation or stay; or (ii) the

36

validity, priority or enforceability of the DIP Liens or the Adequate Protection Liens. Notwithstanding any such reversal, modification, vacation or stay of any use of Cash Collateral, any DIP Obligations or any Adequate Protection Obligations incurred by the Loan Parties to the DIP Agent, the DIP Lenders or the Prepetition Secured Parties, as the case may be, prior to the actual receipt of written notice by the DIP Agent or the Prepetition Agent, as applicable, of the effective date of such reversal, modification, vacation or stay shall be governed in all respects by the original provisions of this Interim Order, and the DIP Agent, the DIP Lenders and the Prepetition Secured Parties shall be entitled to all the rights, remedies, privileges and benefits granted in section 364(e) of the Bankruptcy Code, this Interim Order and the DIP Documents with respect to all uses of Cash Collateral, DIP Obligations and Adequate Protection Obligations.

(d)     Except as expressly provided in this Interim Order or in the DIP Documents, the DIP Liens, the Superpriority Claims, the Adequate Protection Liens and the Adequate Protection Obligations and all other rights and remedies of the DIP Agent, the DIP Lenders and the Prepetition Secured Parties granted by the provisions of this Interim Order and the DIP Documents shall survive, and shall not be modified, impaired or discharged by: (i) the entry of an order converting any of the Cases to a case under chapter 7, dismissing any of the Cases, terminating the joint administration of the Cases or by any other act or omission; (ii) the entry of an order approving the sale of any Collateral pursuant to section 363(b) of the Bankruptcy Code (except to the extent permitted by the DIP Documents); or (iii) the entry of an order confirming a chapter 11 plan in any of the Cases and, pursuant to section 1141(d)(4) of the Bankruptcy Code, the Loan Parties have waived any discharge as to any remaining DIP Obligations or Adequate Protection Obligations. The terms and provisions of this Interim Order and the DIP Documents shall continue in the Cases, in any successor cases if the Cases cease to

be jointly administered and in any superseding chapter 7 cases under the Bankruptcy Code, and the DIP Liens, the Superpriority Claims, the Adequate Protection Liens and the Adequate Protection Obligations and all other rights and remedies of the DIP Agent, the DIP Lenders and the Prepetition Secured Parties granted by the provisions of this Interim Order and the DIP Documents shall continue in full force and effect until the DIP Obligations are indefeasibly paid in full in cash, as set forth herein and in the DIP Documents, and the DIP Commitments have been terminated.

16.     *Effect of Stipulations on Third Parties.*  The Debtors' stipulations, admissions, agreements and releases contained in this Interim Order, including, without limitation, in paragraph 4 of this Interim Order, shall be binding upon the Debtors and any successor thereto (including, without limitation, any chapter 7 or chapter 11 trustee appointed or elected for any of the Debtors) in all circumstances and for all purposes.  The Debtors' stipulations, admissions, agreements and releases contained in this Interim Order, including, without limitation, in paragraph 4 of this Interim Order, shall be binding upon all other parties in interest, including, without limitation, any statutory or non-statutory committees appointed or formed in the Cases (including the Creditors' Committee, if any) and any other person or entity acting or seeking to act on behalf of the Debtors' estates, including any chapter 7 or chapter 11 trustee or examiner appointed or elected for any of the Debtors, in all circumstances and for all purposes unless: (a) such committee or any other party in interest (subject in all respects to any agreement or applicable law that may limit or affect such entity's right or ability to do so), in each case, with requisite standing granted by the Court, has timely filed an adversary proceeding or contested matter (subject to the limitations contained herein, including, *inter alia*, in this paragraph 16) by no later than (i) (x) with respect to parties in interest other than the Creditors' Committee, 75

38

calendar days after entry of this Interim Order and (y) with respect to the Creditors' Committee, 60 calendar days after the appointment of the Creditors' Committee, if any, (ii) any such later date as has been agreed to, in writing, by the Prepetition Agent (with the consent of the Required Lenders (as defined in the Prepetition Credit Agreement)) and (iii) any such later date as has been ordered by the Court upon a motion filed and served within any applicable period of time set forth in this paragraph (the time period established by the foregoing clauses (i), (ii), and (iii), the "**Challenge Period**"), (A) objecting to or challenging the amount, validity, perfection, enforceability, priority or extent of the Prepetition Secured Debt or the Prepetition Liens, or (B) otherwise asserting or prosecuting any action for preferences, fraudulent transfers or conveyances, other avoidance power claims or any other claims, counterclaims or causes of action, objections, contests or defenses (collectively, the "**Challenges**") against the Prepetition Secured Parties or their respective subsidiaries, officers, directors, managers, principals, employees, agents, financial advisors, attorneys, accountants, investment bankers, consultants, representatives and other professionals and the respective successors and assigns thereof, in each case in their respective capacity as such (each a "**Representative**" and, collectively, the "**Representatives**") in connection with matters related to the Prepetition Credit Agreement or other Prepetition Loan Documents, the Prepetition Secured Debt, the Prepetition Liens and the Prepetition Collateral; and (b) there is a final non-appealable order in favor of the plaintiff sustaining any such Challenge in any such timely filed adversary proceeding or contested matter; *provided*, *however*, that any pleadings filed in connection with any Challenge shall set forth with specificity the basis for such challenge or claim and any challenges or claims not so specified prior to the expiration of the Challenge Period shall be deemed forever, waived, released and barred.  If no such Challenge is timely and properly filed during the Challenge Period or the

Court does not rule in favor of the plaintiff in any such proceeding then: (a) the Debtors' stipulations, admissions, agreements and releases contained in this Interim Order, including, without limitation, those contained in paragraph 4 of this Interim Order shall be binding on all parties in interest, including, without limitation, the Creditors' Committee; (b) the obligations of the Loan Parties under the Prepetition Credit Agreement and the other Prepetition Loan Documents, including the Prepetition Secured Debt, shall constitute allowed claims not subject to defense, claim, counterclaim, recharacterization, subordination, offset or avoidance, for all purposes in the Cases, and any subsequent chapter 7 case(s); (c) the Prepetition Liens on the Prepetition Collateral shall be deemed to have been, as of the Petition Date, legal, valid, binding, perfected, security interests and liens, not subject to recharacterization, subordination, avoidance or other defense; and (d) the Prepetition Secured Debt and the Prepetition Liens on the Prepetition Collateral shall not be subject to any other or further claim or challenge by the Creditors' Committee, any non-statutory committees appointed or formed in the Cases or any other party in interest acting or seeking to act on behalf of the Debtors' estates and any defenses, claims, causes of action, counterclaims and offsets by the Creditors' Committee, any non-statutory committees appointed or formed in the Cases, or any other party acting or seeking to act on behalf of the Debtors' estates, whether arising under the Bankruptcy Code or otherwise, against any of the Prepetition Secured Parties and their Representatives arising out of or relating to the Prepetition Credit Agreement and the other Prepetition Loan Documents shall be deemed forever waived, released and barred.  If any such Challenge is timely filed during the Challenge Period, the stipulations, admissions, agreements and releases contained in this Interim Order, including, without limitation, those contained in paragraph 4 of this Interim Order, shall nonetheless remain binding and preclusive (as provided in the second sentence of this paragraph)

on any statutory or nonstatutory committee appointed or formed in the Cases, including the

Creditors' Committee, and on any other person or entity, except to the extent that such

stipulations, admissions, agreements and releases were expressly and successfully challenged in

such Challenge as set forth in a final, non-appealable order of a court of competent jurisdiction.

Nothing in this Interim Order vests or confers on any Person (as defined in the Bankruptcy Code),

including the Creditors' Committee or any non-statutory committees appointed or formed in the

Cases, standing or authority to pursue any claim or cause of action belonging to the Debtors or

their estates, including, without limitation, Challenges with respect to the Prepetition Loan

Documents, the Prepetition Secured Debt or the Prepetition Liens.

17.     *Limitation on Use of DIP Financing Proceeds and Collateral.*  Notwithstanding

anything herein or in any other order by this Court to the contrary, no DIP Loans, Cash

Collateral, Collateral, Prepetition Collateral, proceeds of any of the foregoing or the Carve-Out

may be used: (a) for professional fees and expenses incurred for (i) any litigation or threatened

litigation (whether by contested matter, adversary proceeding or otherwise, including any

investigation in connection with litigation or threatened litigation) against any of the DIP Agent,

the DIP Lenders or the Prepetition Secured Parties or for the purpose of objecting to or

challenging the validity, perfection, enforceability, extent or priority of any claim, lien or

security interest held or asserted by any of the DIP Agent, the DIP Lenders or the Prepetition

Secured Parties or (ii) asserting any defense, claim, cause of action, counterclaim, or offset with

respect to the DIP Obligations, the Prepetition Secured Debt (including, without limitation, for

lender liability or pursuant to section 105, 510, 544, 547, 548, 549, 550 or 552 of the Bankruptcy

Code, applicable non-bankruptcy law or otherwise), the DIP Liens or the Prepetition Liens or

against any of the Prepetition Secured Parties or their respective Representatives; (b) to prevent,

hinder or otherwise delay any of the DIP Agent's or the Prepetition Secured Parties' assertion, enforcement or realization on the Prepetition Collateral or the Collateral in accordance with the DIP Documents, the Prepetition Loan Documents or this Interim Order other than to seek a determination that an Event of Default has not occurred or is not continuing; (c) to seek to modify any of the rights granted to the DIP Agent, the DIP Lenders or the Prepetition Secured Parties under this Interim Order or under the DIP Documents or the Prepetition Loan Documents, in each of the foregoing cases without such parties' prior written consent, which may be given or withheld by such party in the exercise of its respective sole discretion; or (d) pay any amount on account of any claims arising prior to the Petition Date unless such payments are (i) approved by an order of this Court (including, without limitation, hereunder) and (ii) permitted under the DIP Documents; *provided* that, notwithstanding anything to the contrary herein, no more than an aggregate of $50,000 of the DIP Loans (the "**Investigation Fund**") under the DIP Credit Agreement, Collateral, Prepetition Collateral (including Cash Collateral) and/or the Carve-Out may be used for allowed fees and expenses incurred solely by the Creditors' Committee during the Challenge Period to investigate the claims and liens of the Prepetition Secured Parties; *provided, further*, that no portion of the Investigation Fund may be used for fees and expenses incurred to initiate, assert, join, commence, support or prosecute any Challenges.

18.    *Exculpation.*  Nothing in this Interim Order, the DIP Documents, or any other documents related to these transactions shall in any way be construed or interpreted to impose or allow the imposition upon the DIP Agent or any DIP Lender of any liability for any claims arising from the prepetition or postpetition activities of the Debtors in the operation of their business, or in connection with their restructuring efforts.  So long as the DIP Agent and the DIP Lenders comply with their obligations under the DIP Documents and their obligations, if any,

under applicable law (including the Bankruptcy Code), (a) the DIP Agent and the DIP Lenders shall not, in any way or manner, be liable or responsible for (i) the safekeeping of the Collateral, (ii) any loss or damage thereto occurring or arising in any manner or fashion from any cause, (iii) any diminution in the value thereof or (iv) any act or default of any carrier, servicer, bailee, custodian, forwarding agency or other person and (b) all risk of loss, damage or destruction of the Collateral shall be borne by the Loan Parties.

19.     *Interim Order Governs.*  In the event of any inconsistency between the provisions of this Interim Order and the DIP Documents, the provisions of this Interim Order shall govern.

20.     *Binding Effect; Successors and Assigns.*  The DIP Documents and the provisions of this Interim Order, including all findings herein, shall be binding upon all parties in interest in the Cases, including, without limitation, the DIP Agent, the DIP Lenders, the Prepetition Secured Parties, the Creditors' Committee, any non-statutory committees appointed or formed in the Cases, the Debtors and their respective successors and assigns (including any chapter 7 or chapter 11 trustee hereinafter appointed or elected for the estate of any of the Debtors, an examiner appointed pursuant to section 1104 of the Bankruptcy Code, or any other fiduciary appointed as a legal representative of any of the Debtors or with respect to the property of the estate of any of the Debtors) and shall inure to the benefit of the DIP Agent, the DIP Lenders, the Prepetition Secured Parties and the Debtors and their respective successors and assigns; *provided, however*, that the DIP Agent, the DIP Lenders and the Prepetition Secured Parties shall have no obligation to permit the use of the Prepetition Collateral (including Cash Collateral) or to extend any financing to any chapter 7 trustee, chapter 11 trustee or similar responsible person appointed for the estates of the Debtors.

21.    *Limitation of Liability.*  In determining to make any loan or other extension of credit under the DIP Credit Agreement, to permit the use of Cash Collateral or in exercising any rights or remedies as and when permitted pursuant to this Interim Order or the DIP Documents, the DIP Agent and the DIP Lenders shall not (i) be deemed to be in "control" of the operations of or participating in the management of the Debtors; (ii) owe any fiduciary duty to the Debtors, their respective creditors, shareholders or estates; and (iii) be deemed to be acting as a "Responsible Person" or "Owner" or "Operator" with respect to the operation or management of the Debtors (as such terms or similar terms are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, 29 U.S.C. §§ 9601, et seq., as amended, or any similar federal or state statute).

22.    *Master Proof of Claim.*  The Prepetition Agent shall not be required to file proofs of claim in the Cases or any successor case in order to assert claims on behalf of itself and the Prepetition Secured Parties for payment of the Prepetition Secured Debt arising under the Prepetition Loan Documents, including, without limitation, any principal, unpaid interest, fees, expenses and other amounts under the Prepetition Credit Agreement.  The statements of claim in respect of the Prepetition Secured Debt set forth in this Interim Order, together with any evidence accompanying the Motion and presented at the Interim Hearing, are deemed sufficient to and do constitute proofs of claim in respect of such debt and such secured status.  However, in order to facilitate the processing of claims, to ease the burden upon the Court and to reduce an unnecessary expense to the Debtors' estates, the Prepetition Agent is authorized, but not directed, to file in the Debtors' lead chapter 11 case *In re CJ Holding Co., et al.,* Case No. 16-33590 (DRJ), a single, master proof of claim on behalf of itself and the Prepetition Secured Parties on account of any and all of their respective claims arising under the Prepetition Loan Documents

and hereunder (the "**Master Proof of Claim**") against each of the Debtors. Upon the filing of

the Master Proof of Claim against each of the Debtors, the Prepetition Agent and the other

Prepetition Secured Parties and each of their respective successors and assigns, shall be deemed

to have filed a proof of claim in the amount set forth opposite its name therein in respect of its

claims against each of the Debtors of any type or nature whatsoever with respect to the

Prepetition Loan Documents, and the claim of each Prepetition Secured Party (and each of its

respective successors and assigns), named in the Master Proof of Claim shall be treated as if such

entity had filed a separate proof of claim in each of these Cases. Prepetition Agent shall not be

required to identify whether any Prepetition Secured Party acquired its claim from another party

and the identity of any such party or to amend the Master Proof of Claim to reflect a change in

the holders of the claims set forth therein or a reallocation among such holders of the claims

asserted therein resulting from the transfer of all or any portion of such claims. The provisions

of this paragraph 22 and the Master Proof of Claim are intended solely for the purpose of

administrative convenience and shall not affect the right of each Prepetition Secured Party (or its

successors in interest) to vote separately on any plan proposed in these Cases. The Prepetition

Agent shall not be required to attach any instruments, agreements or other documents evidencing

the obligations owing by each of the Debtors to the Prepetition Secured Parties, which

instruments, agreements or other documents will be provided upon written request to counsel to

the Prepetition Agent.

23.     *Insurance*. To the extent that the Prepetition Agent is listed as loss payee under

the Borrowers' or Guarantors' insurance policies, the DIP Agent is also deemed to be the loss

payee under such insurance policies and shall act in that capacity and distribute any proceeds

recovered or received in respect of any such insurance policies, <u>first</u>, subject to the Carve-Out, to

the payment in full of the DIP Obligations (other than contingent indemnification obligations as to which no claim has been asserted), and second, to the payment of the Prepetition Secured Debt.

24.     *Effectiveness*.  This Interim Order shall constitute findings of fact and conclusions of law and shall take effect and be fully enforceable nunc pro tunc to the Petition Date immediately upon entry hereof.  Notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h), 6006(d), 7062, or 9014 of the Bankruptcy Rules or any Local Bankruptcy Rule, or Rule 62(a) of the Federal Rules of Civil Procedure, this Interim Order shall be immediately effective and enforceable upon its entry and there shall be no stay of execution or effectiveness of this Interim Order.

25.     *Headings*.  Section headings used herein are for convenience only and are not to affect the construction of or to be taken into consideration in interpreting this Interim Order.

26.     *Payments Held in Trust*.   Except as expressly permitted in this Interim Order or the DIP Documents, in the event that any person or entity receives any payment on account of a security interest in Collateral, receives any Collateral or any proceeds of Collateral or receives any other payment with respect thereto from any other source prior to indefeasible payment in full in cash of all DIP Obligations under the DIP Documents, and termination of the DIP Commitments in accordance with the DIP Documents, such person or entity shall be deemed to have received, and shall hold, any such payment or proceeds of Collateral in trust for the benefit of the DIP Agent and the DIP Lenders and shall immediately turn over such proceeds to the DIP Agent, or as otherwise instructed by this Court, for application in accordance with the DIP Documents and this Interim Order.

27.     *Credit Bidding*.  (a) The DIP Agent shall, acting at the direction of the Required Lenders, have the right to credit bid, in accordance with the DIP Documents, up to the full

amount of the DIP Obligations in any sale of the Collateral, and (b) except to the extent a party

in interest or the Creditors' Committee successfully prosecutes a Challenge in accordance with

paragraph 16 of this Interim Order or a similar provision contained in any Final Order, the

Prepetition Agent shall, acting at the direction of the requisite Prepetition Secured Parties, have

the right to credit bid up to the full amount of the Prepetition Secured Debt in any sale of the

Collateral, in each case, as provided for in section 363(k) of the Bankruptcy Code, without the

need for further Court order authorizing the same and whether any such sale is effectuated

through section 363(k) or 1129(b) of the Bankruptcy Code, by a chapter 7 trustee under section

725 of the Bankruptcy Code, or otherwise.

28.     *Bankruptcy Rules*.  The requirements of Bankruptcy Rules 4001, 6003 and 6004,

in each case to the extent applicable, are satisfied by the contents of the Motion.

29.     *Necessary Action*.  The Debtors are authorized to take all such actions as are

necessary or appropriate to implement the terms of this Interim Order.

30.     *Retention of Jurisdiction*.  The Court shall retain jurisdiction to enforce the

provisions of this Interim Order, and this retention of jurisdiction shall survive the confirmation

and consummation of any chapter 11 plan for any one or more of the Debtors notwithstanding

the terms or provisions of any such chapter 11 plan or any order confirming any such chapter 11

plan.

31.     ~~*Final*~~ *Interim* Hearing.  The ~~Final~~ *further Interim* Hearing ~~is scheduled for~~ *shall continue on* July 25, 2016 at 1:30

p.m. before this Court.

32.     *Objections*.  ~~Responses or objections, if any, to the relief sought at the Final~~

~~Hearing must be (i) in writing; (ii) signed by counsel or attested to by the objecting party; (iii) in~~

~~conformity with the Bankruptcy Rules and the Local Bankruptcy Rules; (iv) filed with the Clerk~~

~~of the United States Bankruptcy Court for the Southern District of Texas and (v) served on:~~ (a) the Debtors, 3990 Rogerdale, Houston, Texas 77042, Attn.: Danielle Hunter; (b) proposed counsel to the Debtors, Kirkland & Ellis LLP, 300 North LaSalle Street, Chicago, Illinois 60654, Attn: Marc Kieselstein, Chad J. Husnick, and Emily E. Geier; (c) proposed co-counsel to the Debtors, Loeb & Loeb LLP, 10100 Santa Monica Boulevard, Los Angeles California 90067, Attn:  Barney Given and Lance Jurich; (d) counsel to any statutory committee appointed in these cases; (e) Office of the United States Trustee, 515 Rusk Street, Suite 3516, Houston, Texas 77002; (f) counsel to the Prepetition Agent and the DIP Agent, (x) Davis Polk & Wardwell LLP, 450 Lexington Avenue, New York, New York 10017, Attn: Timothy Graulich, Damian S. Schaible and David Schiff and (y) Diamond McCarthy, Two Houston Center, 909 Fannin, 15th Floor, Houston, TX 77010, Attn: Christopher R. Murray and Charles Rubio; and (g) any other party that has filed a request for notices with this Court, in each case to allow actual receipt by ~~the foregoing no later than _____, 2016 at 4:00 p.m., prevailing Central Time.~~

33.     The Debtors shall promptly serve copies of this Interim Order (which shall constitute adequate notice of the Final Hearing, including, without limitation, notice that the Debtors will seek approval at the Final Hearing of a waiver of rights under sections 506(c) and 552(b) of the Bankruptcy Code) to the parties having been given notice of the Interim Hearing, to any party that has filed a request for notices with this Court and to the Creditors' Committee after the same has been appointed, or such Creditors' Committee's counsel, if the same shall have been appointed.

Dated:    July 21, 2016
          Houston, Texas

THE HONORABLE DAVID R. JONES
UNITED STATES BANKRUPTCY JUDGE

**Exhibit 1**

$100,000,000

**SUPERPRIORITY SECURED DEBTOR-IN-POSSESSION CREDIT AGREEMENT**

**Dated as of July [__], 2016**

**among**

**C&J ENERGY SERVICES LTD., a Debtor and Debtor-in-Possession under Chapter 11 of the Bankruptcy Code, as Parent,**

**CJ HOLDING CO., a Debtor and Debtor-in-Possession under Chapter 11 of the Bankruptcy Code, as U.S. Borrower,**

**EACH OF THE SUBSIDIARIES OF THE PARENT PARTY HERETO, each a Debtor and Debtor-in-Possession under Chapter 11 of the Bankruptcy Code, as Guarantors**

**and**

**CORTLAND CAPITAL MARKET SERVICES LLC,
as Administrative Agent**

**and**

**THE LENDERS PARTY HERETO**

# TABLE OF CONTENTS

PAGE

### Article 1
### DEFINITIONS AND ACCOUNTING TERMS

| | | |
|---|---|---|
| Section 1.01 | Defined Terms | 2 |
| Section 1.02 | Other Interpretive Provisions | 35 |
| Section 1.03 | Accounting Terms | 36 |
| Section 1.04 | Rounding | 37 |
| Section 1.05 | Times of Day | 37 |
| Section 1.06 | Eurocurrency Rate Generally | 37 |

### Article 2
### THE COMMITMENTS AND CREDIT EXTENSIONS

| | | |
|---|---|---|
| Section 2.01 | The Loans | 37 |
| Section 2.02 | Borrowings, Conversions and Continuations of Loans | 38 |
| Section 2.03 | [Reserved] | 39 |
| Section 2.04 | [Reserved] | 39 |
| Section 2.05 | Prepayments | 39 |
| Section 2.06 | Termination or Reduction of Commitments | 42 |
| Section 2.07 | Repayment of Loans | 42 |
| Section 2.08 | Interest | 42 |
| Section 2.09 | OID and Fees | 43 |
| Section 2.10 | Computation of Interest and Fees | 44 |
| Section 2.11 | Evidence of Debt | 44 |
| Section 2.12 | Payments Generally; Administrative Agent's Clawback | 44 |
| Section 2.13 | Sharing of Payments by Lenders | 46 |
| Section 2.14 | Priority and Liens; No Discharge | 47 |
| Section 2.15 | Payment of Obligations | 50 |
| Section 2.16 | Defaulting Lenders | 51 |
| Section 2.17 | Designated Lenders | 52 |

### Article 3
### TAXES, YIELD PROTECTION AND ILLEGALITY

| | | |
|---|---|---|
| Section 3.01 | Taxes | 52 |
| Section 3.02 | Illegality | 57 |
| Section 3.03 | Inability to Determine Rates | 58 |
| Section 3.04 | Increased Costs; Reserves on Eurocurrency Rate Loans | 59 |
| Section 3.05 | Compensation for Losses | 60 |
| Section 3.06 | Mitigation Obligations; Replacement of Lenders | 61 |
| Section 3.07 | Survival | 61 |

Article 4

CONDITIONS PRECEDENT TO CREDIT EXTENSIONS

Section 4.01     Conditions of Effectiveness ............................................................61
Section 4.02     Conditions to All Credit Extensions ...........................................66

Article 5

REPRESENTATIONS AND WARRANTIES

Section 5.01     Existence, Qualification and Power.............................................68
Section 5.02     Authorization; No Contravention ...............................................68
Section 5.03     Governmental Authorization; Other Consents............................68
Section 5.04     Binding Effect.............................................................................69
Section 5.05     Financial Statements; No Material Adverse Effect ...................69
Section 5.06     Litigation.....................................................................................70
Section 5.07     No Default....................................................................................70
Section 5.08     Ownership of Property; Liens; Investments ..............................70
Section 5.09     Environmental Compliance ........................................................70
Section 5.10     Insurance .....................................................................................71
Section 5.11     Taxes ...........................................................................................71
Section 5.12     ERISA Compliance.....................................................................72
Section 5.13     Subsidiaries; Equity Interests; Loan Parties .............................73
Section 5.14     Margin Regulations; Investment Company Act .........................73
Section 5.15     Disclosure ...................................................................................73
Section 5.16     Compliance with Laws ...............................................................74
Section 5.17     Intellectual Property; Licenses, Etc ...........................................74
Section 5.18     [Reserved]....................................................................................74
Section 5.19     Casualty, Etc ...............................................................................74
Section 5.20     Labor Matters..............................................................................74
Section 5.21     Collateral Documents .................................................................75
Section 5.22     Sanctions; Anti-Corruption Laws ..............................................75
Section 5.23     Foreign Loan Parties ..................................................................75
Section 5.24     Use of Proceeds..........................................................................76

Article 6

AFFIRMATIVE COVENANTS

Section 6.01     Financial Statements ...................................................................76
Section 6.02     Certificates; Other Information...................................................78
Section 6.03     Notices ........................................................................................81
Section 6.04     Payment of Obligations...............................................................81
Section 6.05     Preservation of Existence, Etc ...................................................82
Section 6.06     Maintenance of Properties ..........................................................82
Section 6.07     Maintenance of Insurance ...........................................................82
Section 6.08     Compliance with Laws ...............................................................82
Section 6.09     Books and Records .....................................................................82
Section 6.10     Inspection Rights ........................................................................83

| Section 6.11 | Use of Proceeds | 83 |
| Section 6.12 | Covenant to Guarantee Obligations and Give Security | 83 |
| Section 6.13 | Compliance with Environmental Laws | 87 |
| Section 6.14 | Further Assurances | 87 |
| Section 6.15 | Material Contracts | 87 |
| Section 6.16 | Anti-Corruption Laws | 88 |
| Section 6.17 | [Reserved] | 88 |
| Section 6.18 | Information Regarding Collateral | 88 |
| Section 6.19 | Conduct of Business | 88 |
| Section 6.20 | Post-Closing Obligations | 88 |
| Section 6.21 | Certain Case Milestones | 88 |
| Section 6.22 | First and Second Day Orders | **Error! Bookmark not defined.** |

Article 7
NEGATIVE COVENANTS

| Section 7.01 | Liens | 89 |
| Section 7.02 | Indebtedness | 91 |
| Section 7.03 | Investments | 93 |
| Section 7.04 | Fundamental Changes | 94 |
| Section 7.05 | Dispositions | 95 |
| Section 7.06 | Restricted Payments | 96 |
| Section 7.07 | Change in Nature of Business | 97 |
| Section 7.08 | Transactions with Affiliates | 97 |
| Section 7.09 | Burdensome Agreements | 97 |
| Section 7.10 | Use of Proceeds | 97 |
| Section 7.11 | Financial Covenants | 97 |
| Section 7.12 | Amendments of Organization Documents | 98 |
| Section 7.13 | Accounting Changes | 98 |
| Section 7.14 | Prepayments, Etc. of Indebtedness | 98 |
| Section 7.15 | Amendment, Etc. of Indebtedness | 98 |
| Section 7.16 | Sanctions | 99 |
| Section 7.17 | Anti-Corruption Laws | 99 |

Article 8
EVENTS OF DEFAULT AND REMEDIES

| Section 8.01 | Events of Default | 99 |
| Section 8.02 | Remedies upon Event of Default | 104 |
| Section 8.03 | Application of Funds | 104 |

Article 9
ADMINISTRATIVE AGENT

| Section 9.01 | Appointment and Authority | 105 |
| Section 9.02 | Rights as a Lender | 105 |
| Section 9.03 | Exculpatory Provisions | 106 |

Section 9.04          Reliance by Administrative Agent...................................................107
Section 9.05          Delegation of Duties .....................................................................107
Section 9.06          Resignation of Administrative Agent ...........................................108
Section 9.07          Non-Reliance on Administrative Agent and Other Lenders...................108
Section 9.08          No Other Duties, Etc.....................................................................109
Section 9.09          Administrative Agent May File Proofs of Claim....................................109
Section 9.10          Collateral and Guaranty Matters..................................................110


Article 10
MISCELLANEOUS

Section 10.01         Amendments, Etc............................................................................111
Section 10.02         Notices; Effectiveness; Electronic Communications...............................113
Section 10.03         No Waiver; Cumulative Remedies; Enforcement....................................116
Section 10.04         Expenses; Indemnity; Damage Waiver.....................................116
Section 10.05         Payments Set Aside.......................................................................118
Section 10.06         Successors and Assigns.................................................................119
Section 10.07         Treatment of Certain Information; Confidentiality..............................124
Section 10.08         Right of Setoff...............................................................................125
Section 10.09         Interest Rate Limitation.................................................................126
Section 10.10         Counterparts; Integration; Effectiveness.........................................126
Section 10.11         Survival of Representations and Warranties...................................126
Section 10.12         Severability...................................................................................127
Section 10.13         Replacement of Lenders ...............................................................127
Section 10.14         Governing Law; Jurisdiction; Etc .................................................128
Section 10.15         Waiver of Jury Trial.......................................................................129
Section 10.16         No Advisory or Fiduciary Responsibility........................................129
Section 10.17         Electronic Execution of Assignments and Certain Other Documents.....130
Section 10.18         USA PATRIOT Act........................................................................130
Section 10.19         ENTIRE AGREEMENT................................................................131
Section 10.20         Judgment Currency ....................................**Error! Bookmark not defined.**
Section 10.21         Acknowledgement and Consent to Bail-In of EEA Financial
                      Institutions....................................................................................131


Article 11
GUARANTY

Section 11.01         Guaranty........................................................................................131
Section 11.02         No Setoff or Deductions; Taxes; Payments ...............................132
Section 11.03         Rights of Administrative Agent and Lenders ............................132
Section 11.04         Certain Waivers.............................................................................133
Section 11.05         Obligations Independent...............................................................134
Section 11.06         Subrogation...................................................................................134
Section 11.07         Termination; Reinstatement..........................................................136
Section 11.08         Subordination.................................................................................137
Section 11.09         [Reserved].....................................................................................138
Section 11.10         [Reserved].....................................................................................138

iv

Section 11.11      Miscellaneous ......................................................................................138
Section 11.12      Conditions of Borrowers.......................................................................138
Section 11.13      Representations, Warranties and Covenants...........................................139
Section 11.14      Additional Guarantors...........................................................................139
Section 11.15      Several Enforcement.............................................................................139

v

#88539744v33

**SCHEDULES**

| | |
|---|---|
| 1.01(a) | Commitments and Applicable Percentages |
| 1.01(b) | Excluded Subsidiaries |
| 5.06 | Litigation |
| 5.13 | Subsidiaries and Other Equity Investments; Loan Parties |
| 6.12 | Guarantors |
| 6.20 | Post-Closing Obligations |
| 7.01 | Existing Liens |
| 7.02 | Existing Indebtedness |
| 7.03 | Existing Investments |
| 7.09 | Burdensome Agreements |
| 10.02 | Administrative Agent's Office, Certain Addresses for Notices |

**EXHIBITS**

| | |
|---|---|
| A | Form of Loan Notice |
| B | [Reserved] |
| C | Form of Note |
| D | Form of Compliance Certificate |
| E-1 | Form of Assignment and Assumption |
| E-2 | Form of Administrative Questionnaire |
| F-1 | Form of U.S. Tax Compliance Certificate |
| F-2 | Form of U.S. Tax Compliance Certificate |
| F-3 | Form of U.S. Tax Compliance Certificate |
| F-4 | Form of U.S. Tax Compliance Certificate |
| G | [Reserved] |
| H | Form of Initial Rolling Budget |
| I | Form of DIP Budget |
| J | Form of Interim Order |
| K | [Reserved] |
| L | [Reserved] |
| M | Form of Notice of Loan Prepayment |
| N | [Reserved] |
| O | Form of Guaranty Supplement |
| P | Foreign Security Principles |

#88539744v33

US\FILIPJE\I2000367.6