**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

ENTERED
12/05/2016

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CJ HOLDING CO., *et al.*,[1] | ) | Case No. 16-33590 (DRJ) |
| | ) | |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | |

**ORDER GRANTING EXPEDITED MOTION OF DEBTORS FOR ENTRY OF**
**AN ORDER (I) AUTHORIZING THE PRIVATE SALE OF CERTAIN OF TOTAL E&S,**
**INC.'S ASSETS FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES AND**
**INTERESTS, (II) AUTHORIZING THE LICENSURE OF CERTAIN OF**
**C&J SPEC-RENT SERVICES, INC.'S RELATED INTELLECTUAL PROPERTY,**
**(III) AUTHORIZING CJ HOLDING CO. AND C&J ENERGY SERVICES**
**LTD. TO ENTER INTO AN EXCLUSIVE SUPPLY AGREEMENT WITH**
**AN UNAFFILIATED THIRD PARTY IN CONJUNCTION WITH SUCH**
**PRIVATE SALE AND LICENSE, AND (IV) GRANTING RELATED RELIEF**
(Docket No. 813)

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for entry of an order (this "Order"), (i) authorizing and approving the private sale of certain of the assets of Total E&S, Inc. ("E&S") free and clear of liens, claims, encumbrances, and other interests (the "Sale") to the extent set forth in that certain Asset Purchase Agreement between C&J Energy Services Ltd. ("C&J Ltd."), E&S and Gardner Denver Petroleum Pumps, LLC ("Gardner Denver") dated as of [_____ __], 2016 (such agreement and all schedules, exhibits and attachments thereto, the "Asset Purchase Agreement")

---

[1]  The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number (if any), are: CJ Holding Co. (4586); Blue Ribbon Technology Inc. (6338); C&J Corporate Services (Bermuda) Ltd.; C&J Energy Production Services-Canada Ltd.; C&J Energy Services, Inc. (3219); C&J Energy Services Ltd.; C&J Spec-Rent Services, Inc. (0712); C&J VLC, LLC (9989); C&J Well Services Inc. (5684); ESP Completion Technologies LLC (4615); KVS Tranportation, Inc. (2415); Mobile Data Technologies Ltd.; Tellus Oilfield Inc. (2657); Tiger Cased Hole Services Inc. (7783); and Total E&S, Inc. (5351).  The location of the Debtors' service address is 3990 Rogerdale, Houston, Texas 77042.

[2]  Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion.

attached hereto as Exhibit 1, (ii) authorizing the licensure of certain of C&J Spec-Rent Services, Inc.'s related intellectual property to Gardner Denver (the "License") pursuant to that certain Intellectual Property License between C&J Spec-Rent Services, Inc. and Gardner Denver (such agreement and all schedules, exhibits and attachments thereto, the "License Agreement") dated as of [_____ __], 2016 attached hereto as Exhibit B to Exhibit 1[3], (iii) authorizing CJ Holding Co. ("CJ Holding") and C&J Ltd. to enter into an exclusive Supply Agreement dated as of [_____ __], 2016 (such agreement and all schedules, exhibits and attachments thereto, the "Supply Agreement" and, together with the Asset Purchase Agreement and the License Agreement, the "Transaction Documents") with Gardner Denver in the form previously filed with this Court under seal in conjunction with the Asset Purchase Agreement and the License Agreement; and (iv) granting related relief; and upon the Prestidge Declaration; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; and this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and that this Court may enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the Debtors' notice of the Motion and opportunity for a hearing on the Motion were appropriate under the circumstances and no other notice need be provided; and all parties in interest having been heard, or having had the opportunity to be heard, regarding the Transaction Documents and the Sale; and this Court having reviewed the Motion and having heard the statements made and the evidence presented in support of the relief requested therein at a hearing before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the

---

[3]   The schedule to the License Agreement contains confidential proprietary information and accordingly has been filed with this Court under seal.

Motion and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, it is HEREBY FOUND AND DETERMINED THAT:[4]

### Jurisdiction, Final Order, and Statutory Predicates

A.     This Court has jurisdiction to hear and determine the Motion pursuant to 28 U.S.C. §§ 157 and 1334, and this matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

B.     The statutory bases for the relief requested in the Motion are sections 105 and 363 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, 9006, 9007 and 9014.

C.     This Order constitutes a final order within the meaning of 28 U.S.C. § 158(a). Notwithstanding Bankruptcy Rules 6004(h) and 6006(d), the Court expressly finds that there is no just reason for delay in the implementation of this Order and expressly directs entry of judgment as set forth herein.

### Notice of the Motion and the Transactions

D.     As evidenced by the affidavits of service previously filed with the Court, (i) proper, timely, adequate, and sufficient notice of the Motion, the Hearing, and the Sale have been provided in accordance with sections 102(1) and 363 of the Bankruptcy Code, and Bankruptcy Rules 2002, 6004, 9006, 9007, and 9014, (ii) such notice was good and sufficient, appropriate under the particular circumstances and reasonably calculated to reach and apprise all known and unknown holders of liens, claims, encumbrances and interests and (iii) no other or further notice

---

[4]   The findings and conclusions set forth herein constitute this Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such. All findings of fact and conclusions of law announced by the Court at the Hearing in relation to the Motion are hereby incorporated herein to the extent not inconsistent herewith.

of the Motion, the Sale, or the Transactions is or shall be required.   A reasonable opportunity to object or be heard regarding the requested relief has been afforded to all interested persons and entities.

### Business Justification for Sale and Transactions

E.       The assets to be sold pursuant to the terms of the Asset Purchase Agreement (the "Purchased Assets") and to be licensed pursuant to the terms of the License Agreement (the "Licensed Intellectual Property") constitute property of the Debtors' estates and title thereto is vested in the Debtors' estates within the meaning of section 541(a) of the Bankruptcy Code.

F.       The Debtors have demonstrated a sufficient basis and compelling circumstances requiring them to enter into the Transaction Documents, sell the Purchased Assets, enter into and consummate the Supply Agreement and license the Licensed Intellectual Property, and such actions are appropriate exercises of the Debtors' business judgment, consistent with the Debtors' fiduciary duties, and in the best interests of the Debtors, their estates, their creditors and all parties in interest.  Such business reasons include, but are not limited to, that (i) the Sale will both increase the Debtors' liquidity position and focus its assets in core operating areas, and (ii) entry into the Supply Agreement will allow the Debtors to acquire the Covered Products (as defined in the Supply Agreement) necessary to operate the Debtors' pressure pumping business at prices that are lower than if the Debtors produced such Covered Products themselves.

### Good Faith Purchaser

G.       The Transaction Documents, the Sale and License contemplated thereby, and the terms of the Supply Agreement have been negotiated, proposed and entered into by the Debtors and Gardner Denver in good faith, at arm's length, and without collusion.  The terms and conditions of the Transaction Documents are fair and reasonable, and the Sale, the License, and

the terms of the Supply Agreement are in the best interests of the Debtors, their estates, their creditors, and all other parties in interest.

      H.     Gardner Denver is purchasing the Purchased Assets in good faith and is a good faith buyer within the meaning of section 363(m) of the Bankruptcy Code. Gardner Denver has proceeded in good faith in all respects in connection with the Transactions including, but not limited to, disclosing all payments to be made by Gardner Denver in connection with the Sale. Gardner Denver is therefore entitled to all of the protections afforded under section 363(m) of the Bankruptcy Code.

      I.     Gardner Denver is not an "insider" or "affiliate" of the Debtors, as those terms are defined in the Bankruptcy Code, and no common identity of incorporators, directors, or stockholders exists between Gardner Denver and the Debtors.

      J.     The Purchase Price under the Asset Purchase Agreement constitutes (i) reasonably equivalent value under the Bankruptcy Code and Uniform Fraudulent Transfer Act, (ii) fair consideration under the Uniform Fraudulent Conveyance Act, and (iii) reasonably equivalent value, fair consideration, and fair value under any other applicable laws of the United States, any state, territory or possession, or the District of Columbia for the Purchased Assets, and may not be avoided under Bankruptcy Code section 363(n) or under any other law of the United States, any state, territory, possession, or the District of Columbia, or any other applicable law. The Transaction Documents were not entered into for the purpose of hindering, delaying, or defrauding creditors under the Bankruptcy Code or under the laws of the United States, any state, territory, possession, or the District of Columbia.

## Sale Free and Clear of Liens

      K.     The Debtors have full corporate authority to execute and deliver the Transaction Documents and to perform all of their respective obligations thereunder, and the Sale, the

License and the Supply Agreement have been duly and validly authorized by all corporate authority necessary to consummate them.  No consents or approvals, other than as expressly provided for in the Transaction Documents and the entry of this Order, are required by the Debtors to consummate the Sale, the License or the Supply Agreement.

L.     The sale and assignment of the Purchased Assets to Gardner Denver will be, as of the Closing, a legal, valid, and effective transfer of such Purchased Assets, and each such transfer and assignment vests or will vest Gardner Denver with all right, title, and interest of the Debtors to the Purchased Assets free and clear of all liens, claims, rights, interests, charges, and encumbrances, other than Permitted Exceptions and Assumed Liabilities (each as defined in the Sale Agreement) (the "Encumbrances").  Gardner Denver would not enter into the Asset Purchase Agreement to acquire the Purchased Assets, or the other Transaction Documents, if the Sale were not free and clear of such Encumbrances pursuant to Bankruptcy Code section 363(f) or if Gardner Denver would, or in the future could, be liable for any such Encumbrances.  A sale of the Purchased Assets other than one free and clear of the Encumbrances would adversely impact the Debtors' estates.  Therefore, the Sale contemplated by the Asset Purchase Agreement is in the best interests of the Debtors, their estates, their creditors, and all other parties in interest.

M.     This Order shall be effective as a determination that, upon the Closing of the Asset Purchase Agreement, Gardner Denver shall not be responsible for any Encumbrances of any kind or nature whatsoever existing as to the Debtors or the Purchased Assets, including in respect of the following:  (i) any labor or employment agreements; (ii) any mortgages, deeds of trust and security interests; (iii) any intercompany loans and receivables between the Seller and any other Debtor; (iv); liabilities arising under any Environmental Laws, with respect to any assets owned or operated by any of the Debtors or any corporate predecessor of any of the

Debtors at any time prior to the Closing; (v) any bulk sales or similar law; (vi) any tax statutes or ordinances, including, without limitation, the Internal Revenue Code of 1986, as amended; and (vii) any Excluded Liabilities.

N.    The Debtors may sell the Purchased Assets free and clear of all Encumbrances of any kind or nature whatsoever, because, with respect to each creditor asserting an Encumbrance, one or more of the standards set forth in Bankruptcy Code section 363(f)(1)-(5) has been satisfied.  Those holders of Encumbrances who did not object, or who withdrew their objections to the Sale, are deemed to have consented to the Sale pursuant to Bankruptcy Code section 363(f)(2).  Those holders of Encumbrances who did object fall within one or more of the other subsections of Bankruptcy Code section 363(f).  All objections to the Sale and the License have been resolved or overruled.

O.    The consummation of the Sale, the License and the other transactions contemplated by the Transaction Documents is legal, valid, and properly authorized under all applicable provisions of the Bankruptcy Code, including, without limitation, Bankruptcy Code sections 105(a), 363(b), 363(f), and 363(m), and all of the applicable requirements of such sections have been or will be complied with in respect of the Sale as of the Closing.

P.    Upon the Closing, Gardner Denver shall not, and shall not be deemed to:  (i) be the successor of or successor employer to the Debtors, (ii) have, de facto, or otherwise, merged or consolidated with or into the Debtors, (iv) be a mere continuation or substantial continuation of the Debtors or the enterprise(s) of Debtors, or (v) be liable for any acts or omissions of the Debtors in the conduct of the Business (as defined in the Asset Purchase Agreement) or any claim whatsoever against the Debtors related to the Business or the Purchased Assets, other than as set forth in the Asset Purchase Agreement, including the Assumed Liabilities and Permitted

Exceptions.  Without limiting the generality of the foregoing, and except as otherwise provided in the Asset Purchase Agreement, the parties intend that Gardner Denver shall not be liable for any Encumbrance or Liability (other than Assumed Liabilities and Permitted Exceptions) against the Debtors (or any of their predecessors), and Gardner Denver shall have no successor or vicarious liability of any kind or character whatsoever, including, but not limited to, any theory of antitrust, successor or transferee liability, labor, employment or benefits law, de facto merger or substantial continuity, whether known or unknown as of the Closing, whether asserted or unasserted, fixed or contingent, liquidated or unliquidated, in each case, with respect to the Business, the Purchased Assets or any Liabilities of the Debtors (or any of their predecessors), in each case, other than Assumed Liabilities and Permitted Exceptions.  Gardner Denver would not have acquired the Purchased Assets but for the foregoing protections against potential claims based upon "successor liability" theories.

## Additional Findings

Q.     Time is of the essence in consummating the Transactions – it is essential that the Debtors obtain the benefits under the Supply Agreement and that the sale of the Purchased Assets and the licensing of the Licensed Intellectual Property occur within the time constraints set forth in the Transaction Documents to ensure that the Transactions are consummated. Accordingly, there is no just reason to delay the implementation of this Order, and there is cause to waive the stays contemplated by Bankruptcy Rules 6004 and 6006.

R.     The Transactions do not constitute a *sub rosa* chapter 11 plan.  The Transactions neither impermissibly restructure the rights of the Debtors' creditors nor impermissibly dictate a plan of reorganization for the Debtors.

S.      The Sale, License and the other transactions contemplated by the Transaction Documents are in the best interests of the Debtors and their estates, creditors, interest holders, and all other parties in interest.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED THAT:

1.      The relief requested in the Motion is granted in its entirety, subject to the terms and conditions contained herein.

2.      All objections and responses to the Motion, including all reservations of rights included therein, that have not been overruled, withdrawn, waived, settled, continued, or resolved, are hereby overruled and denied on the merits.

3.      The Transaction Documents, the Sale, the License, and the execution and delivery of the Supply Agreement and the License Agreement are hereby approved, and the Debtors are hereby authorized, empowered and directed to enter into, and to perform their obligations under, the Transaction Documents, to execute and perform such other agreements or documents, and take any other actions as are necessary or desirable to effectuate the terms of the Transaction Documents and the Sale.

4.      The Debtors are hereby authorized to proceed with the Sale as a private sale and are not obligated to conduct an auction process with respect to the Purchased Assets.

5.      The Asset Purchase Agreement has been entered into by Gardner Denver in good faith and Gardner Denver is a good faith purchaser of the Purchased Assets as that term is used in Bankruptcy Code section 363(m).  Gardner Denver is hereby granted and is entitled to all of the protections provided to a good faith purchaser under section 363(m) of the Bankruptcy Code. Pursuant to section 363(m) of the Bankruptcy Code, if any or all of the provisions of this Order are hereafter reversed, modified, or vacated by a subsequent order of this Court or any other

court, such reversal, modification, or vacatur shall not affect the validity and enforceability of any sale, transfer, or assignment under the Transaction Documents or obligation or right granted pursuant to the terms of this Order, and notwithstanding any reversal, modification, or vacatur shall be governed in all respects by the original provisions of this Order or the Transaction Documents, as the case may be.

6.      The consideration provided by Gardner Denver for the Purchased Assets under the Asset Purchase Agreement shall be deemed for all purposes to constitute reasonably equivalent value and fair consideration under the Bankruptcy Code and any other applicable law, and the Sale may not be avoided, or costs or damages imposed or awarded under Bankruptcy Code section 363(n) or any other provision of the Bankruptcy Code, the Uniform Fraudulent Transfer Act, the Uniform Fraudulent Conveyance Act or any other similar federal or state laws.

7.      None of Gardner Denver or its affiliates, successors, assigns, equity holders, employees or professionals shall have or incur any liability to, or be subject to any action by any of the Debtors or any of their estates, predecessors, successors or assigns, arising out of the negotiation, investigation, preparation, execution, delivery of the Transaction Documents and the entry into and consummation of the Transactions, except as expressly provided in the Transaction Documents and this Order.

8.      At the closing of the Sale (the "Closing"), and, with respect to the Supply Agreement, upon entry of this Order, the Debtors will be authorized, empowered and directed to fully perform under, consummate, and implement the terms of the Transaction Documents, together with any and all additional instruments and documents that may be reasonably necessary or desirable to implement and effectuate the terms of the Transaction Documents, this Order, the Sale, and the License, including, without limitation, deeds, assignments, and other

instruments of transfer, and to take all further actions as may reasonably be requested by Gardner Denver for the purpose of assigning, transferring, granting, conveying, and conferring to Gardner Denver, or reducing to possession any or all of the Purchased Assets, as may be necessary or appropriate to the performance of the Debtors' obligations as contemplated by the Transaction Documents, without any further corporate action or orders of this Court; *provided*, *however*, that notwithstanding anything to the contrary herein, nothing contained in this Order shall limit the effectiveness or enforceability of the Final DIP Order in any way.  Subject to the terms of the Asset Purchase Agreement, neither the Debtors nor Gardner Denver shall have any obligation to proceed with the Closing of the Sale until all conditions precedent to their obligations to do so have been met, satisfied, or waived.

9.      The Debtors are further authorized and empowered to cause to be filed with the secretary of state of any state or other applicable officials of any applicable governmental units any and all certificates, agreements, amendments, applications, or approvals necessary or appropriate to effectuate the Sale contemplated by the Transaction Documents, any related agreements, and this Order, including any such actions, filings, or recordings as may be required under the Transaction Documents, appropriate provisions of the applicable laws of all applicable governmental units, or as any of the officers of the Debtors may determine are necessary or appropriate.  The execution of any such document or the taking of any such action shall be, and hereby is, deemed conclusive evidence of the authority of such person to so act.

10.     Except to the extent specifically provided in the Asset Purchase Agreement, upon the Closing, the Debtors shall be, and hereby are, authorized, empowered, and directed, pursuant to sections 105, 363(b), and 363(f) of the Bankruptcy Code, to execute the Asset Purchase Agreement, consummate the transactions contemplated therein and sell the Purchased Assets to

Gardner Denver. The Sale of the Purchased Assets by the Debtors to Gardner Denver shall constitute a legal, valid, and effective transfer of the Purchased Assets notwithstanding any requirement for approval or consent by any person and vests in Gardner Denver all rights, title, and interest of the Debtors in and to the Purchased Assets, free and clear of all Encumbrances of any kind or nature whatsoever, with any such Encumbrances attaching to the net sale proceeds in the same validity, extent and priority as immediately prior to the Sale.

11.    The Motion shall be deemed to provide sufficient notice of the Sale of the Purchased Assets free and clear of all Encumbrances, and no further or other notice is required. Upon the Closing, and except as otherwise expressly provided in the Asset Purchase Agreement, all Encumbrances of any kind or nature whatsoever shall not be enforceable against Gardner Denver or the Purchased Assets.

12.    Unless otherwise expressly included in the Assumed Liabilities and Permitted Exceptions, Gardner Denver shall not be responsible for any Encumbrances, including, but not limited to, with respect to any of the following: (i) any labor or employment agreements; (ii) any mortgages, deeds of trust and security interests; (iii) any intercompany loans and receivables between the Seller and any other Debtor; (iv); liabilities arising under any Environmental Laws, with respect to any assets owned or operated by any of the Debtors or any corporate predecessor of any of the Debtors at any time prior to the Closing; (v) any bulk sales or similar law; (vi) any tax statutes or ordinances, including, without limitation, the Internal Revenue Code of 1986, as amended; and (vii) any Excluded Liabilities.

13.    Except to the extent expressly provided in the Asset Purchase Agreement or by this Order, pursuant to sections 105 and 363 of the Bankruptcy Code, all persons and entities, including, but not limited to, all governmental units (as defined in sections 101(27) and 101(41)

of the Bankruptcy Code), debt security holders, equity security holders, the Debtors' employees or former employees, lenders, parties to or beneficiaries of any benefit plan, trade creditors, litigation claimants, and other persons, asserting or holding an Encumbrance of any kind or nature whatsoever against, in, or with respect to, the Debtors or the Purchased Assets (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, senior or subordinated), arising under or out of, or in connection with, or in any way relating to the Purchased Assets, the operation of the Debtors' business prior to the Closing Date or the transfer of the Purchased Assets to Gardner Denver, shall be forever barred, estopped and permanently enjoined from taking any action against Gardner Denver or its affiliates, successors, assigns, equity holders, employees or professionals, or against the Purchased Assets, including, but not limited to, asserting, prosecuting or otherwise pursuing any Encumbrances, causes of action, setoffs, rights of subrogation, recoupments of any kind, or any action to recover any Encumbrances or any liabilities of the Debtors.  Upon Closing, no holder of any Encumbrance against the Debtors shall interfere with Gardner Denver's title to or use and enjoyment of the Purchased Assets based on or related to such Encumbrance.  All persons and entities are hereby enjoined from taking action that would interfere with or adversely affect the ability of the Debtors to transfer the Purchased Assets in accordance with the terms of the Asset Purchase Agreement and this Order.

14.     Upon the Closing, except as specifically included in Assumed Liabilities, Gardner Denver shall not and shall not be deemed to: (i) be the successor of or successor employer to the Debtors, (ii) have, de facto, or otherwise, merged or consolidated with or into the Debtors, (iv) be a mere continuation or substantial continuation of the Debtors or the enterprise(s) of Debtors, or (v) be liable for any acts or omissions of the Debtors in the conduct of the Business (as

defined in the Asset Purchase Agreement) or any claim whatsoever against the Debtors related to the Business or the Purchased Assets, other than as set forth in the Asset Purchase Agreement, including the Assumed Liabilities and Permitted Exceptions.  Without limiting the generality of the foregoing, and except as otherwise provided in the Asset Purchase Agreement, the Debtors and Gardner Denver intend, and the Court hereby orders, that Gardner Denver shall not be liable for any Encumbrance against the Debtors or any of their predecessors, and Gardner Denver shall have no successor or vicarious liability of any kind or character, including, but not limited to, any claims based on any theory of antitrust, successor or transferee liability, labor, employment or benefits law, de facto merger or substantial continuity, whether known or unknown as of the Closing Date, whether fixed or contingent, asserted or unasserted, or liquidated or unliquidated, with respect to the Business, the Purchased Assets or any Liabilities, whether now existing or hereinafter arising, of the Debtors, in each case, other than Assumed Liabilities or Permitted Exceptions.

15.     The provisions of this Order authorizing the sale and assignment of the Purchased Assets free and clear of Encumbrances shall be self-executing, and neither the Debtors nor Gardner Denver shall be required to execute or file releases, termination statements, assignments, consents, or other instruments in order to effectuate, consummate, and implement the provisions of this Order.  However, the Debtors and Gardner Denver, and each of their respective officers, employees, and agents hereby are authorized and empowered to take all actions and execute and deliver any and all documents and instruments that either the Debtors or Gardner Denver deem necessary or appropriate to implement and effectuate the terms of the Transaction Documents or this Order.  If any person or entity that has filed statements or other documents or agreements evidencing Encumbrances in any of the Purchased Assets does not

deliver to the Debtors or Gardner Denver prior to the Closing Date, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of liens and easements, and any other documents necessary for the purpose of documenting the release of all Encumbrances and other interests that the person or entity has or may assert with respect to any of the Purchased Assets, the Debtors are authorized, empowered and directed to execute and file such statements, instruments, releases, and other documents on behalf of such persons or entity with respect to any of the Purchased Assets.  All Encumbrances of any kind or nature whatsoever existing as to the Purchased Assets prior to the Closing Date have been unconditionally released, discharged, and terminated as to the Purchased Assets, and the conveyances described herein have been effected.

16.     On the Closing Date, each of the Debtors' creditors is authorized and directed to execute such documents and take all other actions as may be necessary to release any Encumbrances in the Purchased Assets, if any, as such Encumbrances may have been recorded or otherwise exist.

17.     All of the Debtors' rights and interests in the Purchased Assets to be acquired by Gardner Denver under the Transaction Documents shall be, as of the Closing Date and upon the occurrence of the Closing, transferred to and vested in Gardner Denver, free and clear of all Encumbrances.  Upon the occurrence of the Closing, this Order shall be considered and constitute for any and all purposes a full and complete general assignment, conveyance, and transfer of all of the Debtors' rights and interests in the Purchased Assets acquired by Gardner Denver under the Transaction Documents or a bill of sale or assignment transferring good and marketable, indefeasible title and interest in the Purchased Assets to Gardner Denver, free and clear of all Encumbrances.

18.     Each and every federal, state, and local governmental agency or department, and any other person or entity, is hereby authorized to accept any and all documents and instruments in connection with or necessary and appropriate to consummate the Transactions contemplated by the Transaction Documents and this Order.

19.     Except to the extent permitted by section 525(a) of the Bankruptcy Code, no governmental unit may revoke or suspend any right, permit, trademark or license relating to the operation of the Purchased Assets sold, transferred, or conveyed to Gardner Denver on account of the filing or pendency of this chapter 11 case or the consummation of the Sale.

20.     Subject to the terms of the Transaction Documents, the Transaction Documents and any related agreements may be waived, modified, amended, or supplemented by written agreement of the Debtors and Gardner Denver, without further action or order of the Court; *provided*, however, that any such waiver, modification, amendment, or supplement is not material and substantially conforms to, and effectuates, the Transaction Documents and any related agreements.

21.     The failure specifically to include or reference any particular provisions of the Transaction Documents or any related agreements in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court, the Debtors, and Gardner Denver that the Transaction Documents are authorized and approved in their entirety with such amendments thereto as may be made by the parties in accordance with this Order.

22.     This Order and the Transaction Documents shall be binding upon and govern the acts of all persons and entities, including, without limitation, the Debtors and Gardner Denver, their respective successors and permitted assigns, including, without limitation, any chapter 11 trustee hereinafter appointed for the Debtors' estates or any trustee appointed in a chapter 7 case

if this case is converted from chapter 11, all creditors and interest holders of the Debtors (whether known or unknown), filing agents, filing officers, title agents, recording agencies, secretaries of state, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register, or otherwise record or release any documents or instruments or who may be required to report or insure any title in or to the Purchased Assets.  If any order under Bankruptcy Code section 1112 is entered, such order shall provide that this Order and the rights granted to Gardner Denver hereunder shall remain effective and, notwithstanding such dismissal, shall remain binding on the parties in interest.

23.    The automatic stay pursuant to section 362 of the Bankruptcy Code is hereby lifted with respect to Gardner Denver to the extent necessary, without further order of this Court, to allow Gardner Denver to deliver any notice provided for in the Transaction Documents and allow Gardner Denver to take any and all actions and pursue and enforce any and all remedies permitted under the Transaction Documents in accordance with the terms and conditions thereof.

24.    Nothing in this Order or the Transaction Documents (a) releases, nullifies, precludes, or enjoins (i) the enforcement of any liability to a governmental unit under police or regulatory statutes or regulations that any entity would be subject to as the owner or operator of property after the date of entry of this Order, or (ii) a governmental unit from enforcing any environmental and safety requirement under which a purchaser of property would otherwise be liable as a current owner or operator after the date of purchase, which is not dischargeable under the provisions of the Bankruptcy Code or other applicable laws, or (b) permits, in any circumstance, a governmental unit to obtain from Gardner Denver penalties arising under environmental health and safety laws prior to the Closing Date.

25.     All Encumbrances of any kind or nature whatsoever in the Purchased Assets shall, upon Closing, attach to the net proceeds of the Sale with the same force, validity, priority, and effect, if any, as the Encumbrances formerly had against the Purchased Assets, if any, subject to the Debtors' ability to challenge the extent, validity, priority, and effect of the Encumbrances subject to and as otherwise provided in any other order of this Court in this chapter 11 case.

26.     Subject to the terms of the Transaction Documents, the Debtors will cooperate with Gardner Denver, and Gardner Denver will cooperate with the Debtors, in a commercially reasonable manner, in each case to ensure that the Transactions contemplated by the Transaction Documents are consummated, and the Debtors will make such modifications or supplements to any bill of sale or other document executed in connection with the Closing to facilitate such consummation as contemplated by the Transaction Documents.

27.     This Court shall retain jurisdiction to enforce the terms and provisions of this Order and the Transaction Documents in all respects and to decide any disputes concerning this Order and the Transaction Documents, or the rights and duties of the parties hereunder or thereunder or any issues relating to the Transaction Documents and this Order including, but not limited to, the interpretation of terms, conditions, and provisions hereof and thereof, the status, nature, and extent of the Purchased Assets and all issues and disputes arising in connection with the relief authorized herein, inclusive of those concerning the transfer of assets free and clear of all Encumbrances.

28.     This Order constitutes a final order within the meaning of 28 U.S.C. § 158(a). Notwithstanding any provision in the Bankruptcy Rules to the contrary, including but not limited to Bankruptcy Rules 6004, the Court expressly finds there is no reason for delay in the implementation of this Order and, accordingly:  (i) the terms of this Order shall be immediately

effective and enforceable upon its entry; (ii) the Debtors are not subject to any stay of this Order or in the implementation, enforcement or realization of the relief granted in this Order; and (iii) the Debtors may, in their discretion and without further delay, take any action and perform any act authorized under this Order.

29.     A certified copy of this Order may be filed with the appropriate clerk and/or recorded with the recorder to act to cancel any of the Encumbrances.

30.     The provisions of this Order are non-severable and mutually dependent.

31.     Nothing in any order of this Court or contained in any plan of reorganization or liquidation confirmed in the chapter 11 case, or in any subsequent or converted case of the Debtors under chapter 7 or chapter 11 of the Bankruptcy Code, shall conflict with or derogate from the provisions of the Transaction Documents or the terms of this Order and, to the extent of any conflict or derogation between this Order, on the one hand, and such future plan or order in these chapter 11 cases or in any subsequent or converted bankruptcy cases, on the other hand, the terms of this Order shall control.  The Transaction Documents shall not be subject to rejection or avoidance under any circumstances.

32.     To the extent any provisions of this Order conflict with the terms and conditions of the Transaction Documents, this Order shall govern and control.

33.     The terms of the *Order Granting Debtors' Motion for Entry of an Order Authorizing the Debtors to File Certain Confidential Information under Seal in Connection with the Debtors' Motion Regarding a Private Sale to Gardner Denver Petroleum Pumps, LLC and Related Transactions* shall survive the entry of this Order.  For the avoidance of doubt, the Supply Agreement and the License Agreement shall remain redacted and shall not be viewed by any third party unless explicitly authorized under the terms of the Sealing Order.

34.     No bulk sales law or any similar law of any state or jurisdiction applies in any way to the Sale or any of the transactions contemplated by the Transaction Documents.

35.     This Order shall in no way limit potential liability, if any, of C & J Well Services Inc., or its successors, under the Michigan Employment Security Act, Mich. Comp. Laws 421.1 et seq.

36.     The Debtors are authorized, empowered and directed to take all actions necessary to effectuate the relief granted in this Order in accordance with the Motion.

**Signed:  December 05, 2016.**

**DAVID R. JONES**
**UNITED STATES BANKRUPTCY JUDGE**

# EXHIBIT B

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| CJ HOLDING CO., *et al.*,[1] | ) | Case No. 16-33590 (DRJ) |
|  | ) |  |
|  | ) |  |
| Debtors. | ) | (Jointly Administered) |
|  | ) |  |
|  | ) |  |

**ORDER GRANTING EXPEDITED MOTION OF DEBTORS FOR ENTRY OF
AN ORDER (I) AUTHORIZING THE PRIVATE SALE OF CERTAIN OF TOTAL E&S,
INC.'S ASSETS FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES AND
INTERESTS, (II) AUTHORIZING THE LICENSURE OF CERTAIN OF
C&J SPEC-RENT SERVICES, INC.'S RELATED INTELLECTUAL PROPERTY,
(III) AUTHORIZING CJ HOLDING CO. AND C&J ENERGY SERVICES
LTD. TO ENTER INTO AN EXCLUSIVE SUPPLY AGREEMENT WITH
AN UNAFFILIATED THIRD PARTY IN CONJUNCTION WITH SUCH
PRIVATE SALE AND LICENSE, AND (IV) GRANTING RELATED RELIEF**

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for entry of an order (this "Order"), (i) authorizing and approving the private sale of certain of the assets of Total E&S, Inc. ("E&S") free and clear of liens, claims, encumbrances, and other interests (the "Sale") to the extent set forth in that certain Asset Purchase Agreement between C&J Energy Services Ltd. ("C&J Ltd."), E&S and Gardner Denver Petroleum Pumps, LLC ("Gardner Denver") dated as of [_____ __], 2016 (such agreement and all schedules, exhibits and attachments thereto, the "Asset Purchase Agreement")

---

[1]  The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number (if any), are: CJ Holding Co. (4586); Blue Ribbon Technology Inc. (6338); C&J Corporate Services (Bermuda) Ltd.; C&J Energy Production Services-Canada Ltd.; C&J Energy Services, Inc. (3219); C&J Energy Services Ltd.; C&J Spec-Rent Services, Inc. (0712); C&J VLC, LLC (9989); C&J Well Services Inc. (5684); ESP Completion Technologies LLC (4615); KVS Tranportation, Inc. (2415); Mobile Data Technologies Ltd.; Tellus Oilfield Inc. (2657); Tiger Cased Hole Services Inc. (7783); and Total E&S, Inc. (5351).  The location of the Debtors' service address is 3990 Rogerdale, Houston, Texas 77042.

[2]  Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion.

10964438.2_226681-10002

attached hereto as Exhibit 1, (ii) authorizing the licensure of certain of C&J Spec-Rent Services, Inc.'s related intellectual property to Gardner Denver (the "License") pursuant to that certain Intellectual Property License between C&J Spec-Rent Services, Inc. and Gardner Denver (such agreement and all schedules, exhibits and attachments thereto, the "License Agreement") dated as of [_____ __], 2016 attached hereto as Exhibit B to Exhibit 1[3], (iii) authorizing CJ Holding Co. ("CJ Holding") and C&J Ltd. to enter into an exclusive Supply Agreement dated as of [_____ __], 2016 (such agreement and all schedules, exhibits and attachments thereto, the "Supply Agreement" and, together with the Asset Purchase Agreement and the License Agreement, the "Transaction Documents") with Gardner Denver in the form previously filed with this Court under seal in conjunction with the Asset Purchase Agreement and the License Agreement; and (iv) granting related relief; and upon the Prestidge Declaration; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; and this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and that this Court may enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the Debtors' notice of the Motion and opportunity for a hearing on the Motion were appropriate under the circumstances and no other notice need be provided; and all parties in interest having been heard, or having had the opportunity to be heard, regarding the Transaction Documents and the Sale; and this Court having reviewed the Motion and having heard the statements made and the evidence presented in support of the relief requested therein at a hearing before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the

---

[3]   The schedule to the License Agreement contains confidential proprietary information and accordingly has been filed with this Court under seal.

Motion and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, it is HEREBY FOUND AND DETERMINED THAT:[4]

<h2 align="center">Jurisdiction, Final Order, and Statutory Predicates</h2>

A.      This Court has jurisdiction to hear and determine the Motion pursuant to 28 U.S.C. §§ 157 and 1334, and this matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

B.      The statutory bases for the relief requested in the Motion are sections 105 and 363 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, 9006, 9007 and 9014.

C.      This Order constitutes a final order within the meaning of 28 U.S.C. § 158(a). Notwithstanding Bankruptcy Rules 6004(h) and 6006(d), the Court expressly finds that there is no just reason for delay in the implementation of this Order and expressly directs entry of judgment as set forth herein.

<h2 align="center">Notice of the Motion and the Transactions</h2>

D.      As evidenced by the affidavits of service previously filed with the Court, (i) proper, timely, adequate, and sufficient notice of the Motion, the Hearing, and the Sale have been provided in accordance with sections 102(1) and 363 of the Bankruptcy Code, and Bankruptcy Rules 2002, 6004, 9006, 9007, and 9014, (ii) such notice was good and sufficient, appropriate under the particular circumstances and reasonably calculated to reach and apprise all known and unknown holders of liens, claims, encumbrances and interests and (iii) no other or further notice

---

[4]   The findings and conclusions set forth herein constitute this Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such. All findings of fact and conclusions of law announced by the Court at the Hearing in relation to the Motion are hereby incorporated herein to the extent not inconsistent herewith.

of the Motion, the Sale, or the Transactions is or shall be required.   A reasonable opportunity to object or be heard regarding the requested relief has been afforded to all interested persons and entities.

## Business Justification for Sale and Transactions

E.      The assets to be sold pursuant to the terms of the Asset Purchase Agreement (the "Purchased Assets") and to be licensed pursuant to the terms of the License Agreement (the "Licensed Intellectual Property") constitute property of the Debtors' estates and title thereto is vested in the Debtors' estates within the meaning of section 541(a) of the Bankruptcy Code.

F.      The Debtors have demonstrated a sufficient basis and compelling circumstances requiring them to enter into the Transaction Documents, sell the Purchased Assets, enter into and consummate the Supply Agreement and license the Licensed Intellectual Property, and such actions are appropriate exercises of the Debtors' business judgment, consistent with the Debtors' fiduciary duties, and in the best interests of the Debtors, their estates, their creditors and all parties in interest.  Such business reasons include, but are not limited to, that (i) the Sale will both increase the Debtors' liquidity position and focus its assets in core operating areas, and (ii) entry into the Supply Agreement will allow the Debtors to acquire the Covered Products (as defined in the Supply Agreement) necessary to operate the Debtors' pressure pumping business at prices that are lower than if the Debtors produced such Covered Products themselves.

## Good Faith Purchaser

G.      The Transaction Documents, the Sale and License contemplated thereby, and the terms of the Supply Agreement have been negotiated, proposed and entered into by the Debtors and Gardner Denver in good faith, at arm's length, and without collusion.  The terms and conditions of the Transaction Documents are fair and reasonable, and the Sale, the License, and

the terms of the Supply Agreement are in the best interests of the Debtors, their estates, their creditors, and all other parties in interest.

H.     Gardner Denver is purchasing the Purchased Assets in good faith and is a good faith buyer within the meaning of section 363(m) of the Bankruptcy Code.  Gardner Denver has proceeded in good faith in all respects in connection with the Transactions including, but not limited to, disclosing all payments to be made by Gardner Denver in connection with the Sale. Gardner Denver is therefore entitled to all of the protections afforded under section 363(m) of the Bankruptcy Code.

I.     Gardner Denver is not an "insider" or "affiliate" of the Debtors, as those terms are defined in the Bankruptcy Code, and no common identity of incorporators, directors, or stockholders exists between Gardner Denver and the Debtors.

J.     The Purchase Price under the Asset Purchase Agreement constitutes (i) reasonably equivalent value under the Bankruptcy Code and Uniform Fraudulent Transfer Act, (ii) fair consideration under the Uniform Fraudulent Conveyance Act, and (iii) reasonably equivalent value, fair consideration, and fair value under any other applicable laws of the United States, any state, territory or possession, or the District of Columbia for the Purchased Assets, and may not be avoided under Bankruptcy Code section 363(n) or under any other law of the United States, any state, territory, possession, or the District of Columbia, or any other applicable law.  The Transaction Documents were not entered into for the purpose of hindering, delaying, or defrauding creditors under the Bankruptcy Code or under the laws of the United States, any state, territory, possession, or the District of Columbia.

## Sale Free and Clear of Liens

K.     The Debtors have full corporate authority to execute and deliver the Transaction Documents and to perform all of their respective obligations thereunder, and the Sale, the

License and the Supply Agreement have been duly and validly authorized by all corporate authority necessary to consummate them.  No consents or approvals, other than as expressly provided for in the Transaction Documents and the entry of this Order, are required by the Debtors to consummate the Sale, the License or the Supply Agreement.

L.     The sale and assignment of the Purchased Assets to Gardner Denver will be, as of the Closing, a legal, valid, and effective transfer of such Purchased Assets, and each such transfer and assignment vests or will vest Gardner Denver with all right, title, and interest of the Debtors to the Purchased Assets free and clear of all liens, claims, rights, interests, charges, and encumbrances, other than Permitted Exceptions and Assumed Liabilities (each as defined in the Sale Agreement) (the "Encumbrances").  Gardner Denver would not enter into the Asset Purchase Agreement to acquire the Purchased Assets, or the other Transaction Documents, if the Sale were not free and clear of such Encumbrances pursuant to Bankruptcy Code section 363(f) or if Gardner Denver would, or in the future could, be liable for any such Encumbrances.  A sale of the Purchased Assets other than one free and clear of the Encumbrances would adversely impact the Debtors' estates.  Therefore, the Sale contemplated by the Asset Purchase Agreement is in the best interests of the Debtors, their estates, their creditors, and all other parties in interest.

M.     This Order shall be effective as a determination that, upon the Closing of the Asset Purchase Agreement, Gardner Denver shall not be responsible for any Encumbrances of any kind or nature whatsoever existing as to the Debtors or the Purchased Assets, including in respect of the following:  (i) any labor or employment agreements; (ii) any mortgages, deeds of trust and security interests; (iii) any intercompany loans and receivables between the Seller and any other Debtor; (iv); liabilities arising under any Environmental Laws, with respect to any assets owned or operated by any of the Debtors or any corporate predecessor of any of the

Debtors at any time prior to the Closing; (v) any bulk sales or similar law; (vi) any tax statutes or ordinances, including, without limitation, the Internal Revenue Code of 1986, as amended; and (vii) any Excluded Liabilities.

N.     The Debtors may sell the Purchased Assets free and clear of all Encumbrances of any kind or nature whatsoever, because, with respect to each creditor asserting an Encumbrance, one or more of the standards set forth in Bankruptcy Code section 363(f)(1)-(5) has been satisfied.  Those holders of Encumbrances who did not object, or who withdrew their objections to the Sale, are deemed to have consented to the Sale pursuant to Bankruptcy Code section 363(f)(2).  Those holders of Encumbrances who did object fall within one or more of the other subsections of Bankruptcy Code section 363(f).  All objections to the Sale and the License have been resolved or overruled.

O.     The consummation of the Sale, the License and the other transactions contemplated by the Transaction Documents is legal, valid, and properly authorized under all applicable provisions of the Bankruptcy Code, including, without limitation, Bankruptcy Code sections 105(a), 363(b), 363(f), and 363(m), and all of the applicable requirements of such sections have been or will be complied with in respect of the Sale as of the Closing.

P.     Upon the Closing, Gardner Denver shall not, and shall not be deemed to:  (i) be the successor of or successor employer to the Debtors, (ii) have, de facto, or otherwise, merged or consolidated with or into the Debtors, (iv) be a mere continuation or substantial continuation of the Debtors or the enterprise(s) of Debtors, or (v) be liable for any acts or omissions of the Debtors in the conduct of the Business (as defined in the Asset Purchase Agreement) or any claim whatsoever against the Debtors related to the Business or the Purchased Assets, other than as set forth in the Asset Purchase Agreement, including the Assumed Liabilities and Permitted

Exceptions.  Without limiting the generality of the foregoing, and except as otherwise provided in the Asset Purchase Agreement, the parties intend that Gardner Denver shall not be liable for any Encumbrance or Liability (other than Assumed Liabilities and Permitted Exceptions) against the Debtors (or any of their predecessors), and Gardner Denver shall have no successor or vicarious liability of any kind or character whatsoever, including, but not limited to, any theory of antitrust, successor or transferee liability, labor, employment or benefits law, de facto merger or substantial continuity, whether known or unknown as of the Closing, whether asserted or unasserted, fixed or contingent, liquidated or unliquidated, in each case, with respect to the Business, the Purchased Assets or any Liabilities of the Debtors (or any of their predecessors), in each case, other than Assumed Liabilities and Permitted Exceptions.  Gardner Denver would not have acquired the Purchased Assets but for the foregoing protections against potential claims based upon "successor liability" theories.

### Additional Findings

Q.     Time is of the essence in consummating the Transactions – it is essential that the Debtors obtain the benefits under the Supply Agreement and that the sale of the Purchased Assets and the licensing of the Licensed Intellectual Property occur within the time constraints set forth in the Transaction Documents to ensure that the Transactions are consummated. Accordingly, there is no just reason to delay the implementation of this Order, and there is cause to waive the stays contemplated by Bankruptcy Rules 6004 and 6006.

R.     The Transactions do not constitute a *sub rosa* chapter 11 plan.  The Transactions neither impermissibly restructure the rights of the Debtors' creditors nor impermissibly dictate a plan of reorganization for the Debtors.

S.       The Sale, License and the other transactions contemplated by the Transaction Documents are in the best interests of the Debtors and their estates, creditors, interest holders, and all other parties in interest.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED THAT:

1.       The relief requested in the Motion is granted in its entirety, subject to the terms and conditions contained herein.

2.       All objections and responses to the Motion, including all reservations of rights included therein, that have not been overruled, withdrawn, waived, settled, continued, or resolved, are hereby overruled and denied on the merits.

3.       The Transaction Documents, the Sale, the License, and the execution and delivery of the Supply Agreement and the License Agreement are hereby approved, and the Debtors are hereby authorized, empowered and directed to enter into, and to perform their obligations under, the Transaction Documents, to execute and perform such other agreements or documents, and take any other actions as are necessary or desirable to effectuate the terms of the Transaction Documents and the Sale.

4.       The Debtors are hereby authorized to proceed with the Sale as a private sale and are not obligated to conduct an auction process with respect to the Purchased Assets.

5.       The Asset Purchase Agreement has been entered into by Gardner Denver in good faith and Gardner Denver is a good faith purchaser of the Purchased Assets as that term is used in Bankruptcy Code section 363(m).  Gardner Denver is hereby granted and is entitled to all of the protections provided to a good faith purchaser under section 363(m) of the Bankruptcy Code. Pursuant to section 363(m) of the Bankruptcy Code, if any or all of the provisions of this Order are hereafter reversed, modified, or vacated by a subsequent order of this Court or any other

court, such reversal, modification, or vacatur shall not affect the validity and enforceability of any sale, transfer, or assignment under the Transaction Documents or obligation or right granted pursuant to the terms of this Order, and notwithstanding any reversal, modification, or vacatur shall be governed in all respects by the original provisions of this Order or the Transaction Documents, as the case may be.

6.      The consideration provided by Gardner Denver for the Purchased Assets under the Asset Purchase Agreement shall be deemed for all purposes to constitute reasonably equivalent value and fair consideration under the Bankruptcy Code and any other applicable law, and the Sale may not be avoided, or costs or damages imposed or awarded under Bankruptcy Code section 363(n) or any other provision of the Bankruptcy Code, the Uniform Fraudulent Transfer Act, the Uniform Fraudulent Conveyance Act or any other similar federal or state laws.

7.      None of Gardner Denver or its affiliates, successors, assigns, equity holders, employees or professionals shall have or incur any liability to, or be subject to any action by any of the Debtors or any of their estates, predecessors, successors or assigns, arising out of the negotiation, investigation, preparation, execution, delivery of the Transaction Documents and the entry into and consummation of the Transactions, except as expressly provided in the Transaction Documents and this Order.

8.      At the closing of the Sale (the "Closing"), and, with respect to the Supply Agreement, upon entry of this Order, the Debtors will be authorized, empowered and directed to fully perform under, consummate, and implement the terms of the Transaction Documents, together with any and all additional instruments and documents that may be reasonably necessary or desirable to implement and effectuate the terms of the Transaction Documents, this Order, the Sale, and the License, including, without limitation, deeds, assignments, and other

instruments of transfer, and to take all further actions as may reasonably be requested by Gardner Denver for the purpose of assigning, transferring, granting, conveying, and conferring to Gardner Denver, or reducing to possession any or all of the Purchased Assets, as may be necessary or appropriate to the performance of the Debtors' obligations as contemplated by the Transaction Documents, without any further corporate action or orders of this Court; *provided*, *however*, that notwithstanding anything to the contrary herein, nothing contained in this Order shall limit the effectiveness or enforceability of the Final DIP Order in any way.  Subject to the terms of the Asset Purchase Agreement, neither the Debtors nor Gardner Denver shall have any obligation to proceed with the Closing of the Sale until all conditions precedent to their obligations to do so have been met, satisfied, or waived.

9.     The Debtors are further authorized and empowered to cause to be filed with the secretary of state of any state or other applicable officials of any applicable governmental units any and all certificates, agreements, amendments, applications, or approvals necessary or appropriate to effectuate the Sale contemplated by the Transaction Documents, any related agreements, and this Order, including any such actions, filings, or recordings as may be required under the Transaction Documents, appropriate provisions of the applicable laws of all applicable governmental units, or as any of the officers of the Debtors may determine are necessary or appropriate.  The execution of any such document or the taking of any such action shall be, and hereby is, deemed conclusive evidence of the authority of such person to so act.

10.     Except to the extent specifically provided in the Asset Purchase Agreement, upon the Closing, the Debtors shall be, and hereby are, authorized, empowered, and directed, pursuant to sections 105, 363(b), and 363(f) of the Bankruptcy Code, to execute the Asset Purchase Agreement, consummate the transactions contemplated therein and sell the Purchased Assets to

Gardner Denver.  The Sale of the Purchased Assets by the Debtors to Gardner Denver shall constitute a legal, valid, and effective transfer of the Purchased Assets notwithstanding any requirement for approval or consent by any person and vests in Gardner Denver all rights, title, and interest of the Debtors in and to the Purchased Assets, free and clear of all Encumbrances of any kind or nature whatsoever, with any such Encumbrances attaching to the net sale proceeds in the same validity, extent and priority as immediately prior to the Sale.

11.     The Motion shall be deemed to provide sufficient notice of the Sale of the Purchased Assets free and clear of all Encumbrances, and no further or other notice is required. Upon the Closing, and except as otherwise expressly provided in the Asset Purchase Agreement, all Encumbrances of any kind or nature whatsoever shall not be enforceable against Gardner Denver or the Purchased Assets.

12.     Unless otherwise expressly included in the Assumed Liabilities and Permitted Exceptions, Gardner Denver shall not be responsible for any Encumbrances, including, but not limited to, with respect to any of the following:  (i) any labor or employment agreements; (ii) any mortgages, deeds of trust and security interests; (iii) any intercompany loans and receivables between the Seller and any other Debtor; (iv); liabilities arising under any Environmental Laws, with respect to any assets owned or operated by any of the Debtors or any corporate predecessor of any of the Debtors at any time prior to the Closing; (v) any bulk sales or similar law; (vi) any tax statutes or ordinances, including, without limitation, the Internal Revenue Code of 1986, as amended; and (vii) any Excluded Liabilities.

13.     Except to the extent expressly provided in the Asset Purchase Agreement or by this Order, pursuant to sections 105 and 363 of the Bankruptcy Code, all persons and entities, including, but not limited to, all governmental units (as defined in sections 101(27) and 101(41)

of the Bankruptcy Code), debt security holders, equity security holders, the Debtors' employees or former employees, lenders, parties to or beneficiaries of any benefit plan, trade creditors, litigation claimants, and other persons, asserting or holding an Encumbrance of any kind or nature whatsoever against, in, or with respect to, the Debtors or the Purchased Assets (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, senior or subordinated), arising under or out of, or in connection with, or in any way relating to the Purchased Assets, the operation of the Debtors' business prior to the Closing Date or the transfer of the Purchased Assets to Gardner Denver, shall be forever barred, estopped and permanently enjoined from taking any action against Gardner Denver or its affiliates, successors, assigns, equity holders, employees or professionals, or against the Purchased Assets, including, but not limited to, asserting, prosecuting or otherwise pursuing any Encumbrances, causes of action, setoffs, rights of subrogation, recoupments of any kind, or any action to recover any Encumbrances or any liabilities of the Debtors. Upon Closing, no holder of any Encumbrance against the Debtors shall interfere with Gardner Denver's title to or use and enjoyment of the Purchased Assets based on or related to such Encumbrance. All persons and entities are hereby enjoined from taking action that would interfere with or adversely affect the ability of the Debtors to transfer the Purchased Assets in accordance with the terms of the Asset Purchase Agreement and this Order.

14.    Upon the Closing, except as specifically included in Assumed Liabilities, Gardner Denver shall not and shall not be deemed to: (i) be the successor of or successor employer to the Debtors, (ii) have, de facto, or otherwise, merged or consolidated with or into the Debtors, (iv) be a mere continuation or substantial continuation of the Debtors or the enterprise(s) of Debtors, or (v) be liable for any acts or omissions of the Debtors in the conduct of the Business (as

defined in the Asset Purchase Agreement) or any claim whatsoever against the Debtors related to the Business or the Purchased Assets, other than as set forth in the Asset Purchase Agreement, including the Assumed Liabilities and Permitted Exceptions.  Without limiting the generality of the foregoing, and except as otherwise provided in the Asset Purchase Agreement, the Debtors and Gardner Denver intend, and the Court hereby orders, that Gardner Denver shall not be liable for any Encumbrance against the Debtors or any of their predecessors, and Gardner Denver shall have no successor or vicarious liability of any kind or character, including, but not limited to, any claims based on any theory of antitrust, successor or transferee liability, labor, employment or benefits law, de facto merger or substantial continuity, whether known or unknown as of the Closing Date, whether fixed or contingent, asserted or unasserted, or liquidated or unliquidated, with respect to the Business, the Purchased Assets or any Liabilities, whether now existing or hereinafter arising, of the Debtors, in each case, other than Assumed Liabilities or Permitted Exceptions.

15.     The provisions of this Order authorizing the sale and assignment of the Purchased Assets free and clear of Encumbrances shall be self-executing, and neither the Debtors nor Gardner Denver shall be required to execute or file releases, termination statements, assignments, consents, or other instruments in order to effectuate, consummate, and implement the provisions of this Order.  However, the Debtors and Gardner Denver, and each of their respective officers, employees, and agents hereby are authorized and empowered to take all actions and execute and deliver any and all documents and instruments that either the Debtors or Gardner Denver deem necessary or appropriate to implement and effectuate the terms of the Transaction Documents or this Order.  If any person or entity that has filed statements or other documents or agreements evidencing Encumbrances in any of the Purchased Assets does not

deliver to the Debtors or Gardner Denver prior to the Closing Date, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of liens and easements, and any other documents necessary for the purpose of documenting the release of all Encumbrances and other interests that the person or entity has or may assert with respect to any of the Purchased Assets, the Debtors are authorized, empowered and directed to execute and file such statements, instruments, releases, and other documents on behalf of such persons or entity with respect to any of the Purchased Assets.  All Encumbrances of any kind or nature whatsoever existing as to the Purchased Assets prior to the Closing Date have been unconditionally released, discharged, and terminated as to the Purchased Assets, and the conveyances described herein have been effected.

16.     On the Closing Date, each of the Debtors' creditors is authorized and directed to execute such documents and take all other actions as may be necessary to release any Encumbrances in the Purchased Assets, if any, as such Encumbrances may have been recorded or otherwise exist.

17.     All of the Debtors' rights and interests in the Purchased Assets to be acquired by Gardner Denver under the Transaction Documents shall be, as of the Closing Date and upon the occurrence of the Closing, transferred to and vested in Gardner Denver, free and clear of all Encumbrances.  Upon the occurrence of the Closing, this Order shall be considered and constitute for any and all purposes a full and complete general assignment, conveyance, and transfer of all of the Debtors' rights and interests in the Purchased Assets acquired by Gardner Denver under the Transaction Documents or a bill of sale or assignment transferring good and marketable, indefeasible title and interest in the Purchased Assets to Gardner Denver, free and clear of all Encumbrances.

18.     Each and every federal, state, and local governmental agency or department, and any other person or entity, is hereby authorized to accept any and all documents and instruments in connection with or necessary and appropriate to consummate the Transactions contemplated by the Transaction Documents and this Order.

19.     Except to the extent permitted by section 525(a) of the Bankruptcy Code, no governmental unit may revoke or suspend any right, permit, trademark or license relating to the operation of the Purchased Assets sold, transferred, or conveyed to Gardner Denver on account of the filing or pendency of this chapter 11 case or the consummation of the Sale.

20.     Subject to the terms of the Transaction Documents, the Transaction Documents and any related agreements may be waived, modified, amended, or supplemented by written agreement of the Debtors and Gardner Denver, without further action or order of the Court; *provided*, however, that any such waiver, modification, amendment, or supplement is not material and substantially conforms to, and effectuates, the Transaction Documents and any related agreements.

21.     The failure specifically to include or reference any particular provisions of the Transaction Documents or any related agreements in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court, the Debtors, and Gardner Denver that the Transaction Documents are authorized and approved in their entirety with such amendments thereto as may be made by the parties in accordance with this Order.

22.     This Order and the Transaction Documents shall be binding upon and govern the acts of all persons and entities, including, without limitation, the Debtors and Gardner Denver, their respective successors and permitted assigns, including, without limitation, any chapter 11 trustee hereinafter appointed for the Debtors' estates or any trustee appointed in a chapter 7 case

if this case is converted from chapter 11, all creditors  and interest holders of the Debtors (whether known or unknown), filing agents, filing officers, title agents, recording agencies, secretaries of state, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register, or otherwise record or release any documents or instruments or who may be required to report or insure any title in or to the Purchased Assets.  If any order under Bankruptcy Code section 1112 is entered, such order shall provide that this Order and the rights granted to Gardner Denver hereunder shall remain effective and, notwithstanding such dismissal, shall remain binding on the parties in interest.

23.     The automatic stay pursuant to section 362 of the Bankruptcy Code is hereby lifted with respect to Gardner Denver to the extent necessary, without further order of this Court, to allow Gardner Denver to deliver any notice provided for in the Transaction Documents and allow Gardner Denver to take any and all actions and pursue and enforce any and all remedies permitted under the Transaction Documents in accordance with the terms and conditions thereof.

24.     Nothing in this Order or the Transaction Documents (a) releases, nullifies, precludes, or enjoins (i) the enforcement of any liability to a governmental unit under police or regulatory statutes or regulations that any entity would be subject to as the owner or operator of property after the date of entry of this Order, or (ii) a governmental unit from enforcing any environmental and safety requirement under which a purchaser of property would otherwise be liable as a current owner or operator after the date of purchase, which is not dischargeable under the provisions of the Bankruptcy Code or other applicable laws, or (b) permits, in any circumstance, a governmental unit to obtain from Gardner Denver penalties arising under environmental health and safety laws prior to the Closing Date.

25.     All Encumbrances of any kind or nature whatsoever in the Purchased Assets shall, upon Closing, attach to the net proceeds of the Sale with the same force, validity, priority, and effect, if any, as the Encumbrances formerly had against the Purchased Assets, if any, subject to the Debtors' ability to challenge the extent, validity, priority, and effect of the Encumbrances subject to and as otherwise provided in any other order of this Court in this chapter 11 case.

26.     Subject to the terms of the Transaction Documents, the Debtors will cooperate with Gardner Denver, and Gardner Denver will cooperate with the Debtors, in a commercially reasonable manner, in each case to ensure that the Transactions contemplated by the Transaction Documents are consummated, and the Debtors will make such modifications or supplements to any bill of sale or other document executed in connection with the Closing to facilitate such consummation as contemplated by the Transaction Documents.

27.     This Court shall retain jurisdiction to enforce the terms and provisions of this Order and the Transaction Documents in all respects and to decide any disputes concerning this Order and the Transaction Documents, or the rights and duties of the parties hereunder or thereunder or any issues relating to the Transaction Documents and this Order including, but not limited to, the interpretation of terms, conditions, and provisions hereof and thereof, the status, nature, and extent of the Purchased Assets and all issues and disputes arising in connection with the relief authorized herein, inclusive of those concerning the transfer of assets free and clear of all Encumbrances.

28.     This Order constitutes a final order within the meaning of 28 U.S.C. § 158(a). Notwithstanding any provision in the Bankruptcy Rules to the contrary, including but not limited to Bankruptcy Rules 6004, the Court expressly finds there is no reason for delay in the implementation of this Order and, accordingly:  (i) the terms of this Order shall be immediately

effective and enforceable upon its entry; (ii) the Debtors are not subject to any stay of this Order or in the implementation, enforcement or realization of the relief granted in this Order; and (iii) the Debtors may, in their discretion and without further delay, take any action and perform any act authorized under this Order.

29.     A certified copy of this Order may be filed with the appropriate clerk and/or recorded with the recorder to act to cancel any of the Encumbrances.

30.     The provisions of this Order are non-severable and mutually dependent.

31.     Nothing in any order of this Court or contained in any plan of reorganization or liquidation confirmed in the chapter 11 case, or in any subsequent or converted case of the Debtors under chapter 7 or chapter 11 of the Bankruptcy Code, shall conflict with or derogate from the provisions of the Transaction Documents or the terms of this Order and, to the extent of any conflict or derogation between this Order, on the one hand, and such future plan or order in these chapter 11 cases or in any subsequent or converted bankruptcy cases, on the other hand, the terms of this Order shall control.  The Transaction Documents shall not be subject to rejection or avoidance under any circumstances.

32.     To the extent any provisions of this Order conflict with the terms and conditions of the Transaction Documents, this Order shall govern and control.

33.     The terms of the *Order Granting Debtors' Motion for Entry of an Order Authorizing the Debtors to File Certain Confidential Information under Seal in Connection with the Debtors' Motion Regarding a Private Sale to Gardner Denver Petroleum Pumps, LLC and Related Transactions* shall survive the entry of this Order.  For the avoidance of doubt, the Supply Agreement and the License Agreement shall remain redacted and shall not be viewed by any third party unless explicitly authorized under the terms of the Sealing Order.

34.     No bulk sales law or any similar law of any state or jurisdiction applies in any way to the Sale or any of the transactions contemplated by the Transaction Documents.

35.     This Order shall in no way limit potential liability, if any, of C & J Well Services Inc., or its successors, under the Michigan Employment Security Act, Mich. Comp. Laws 421.1 et seq.

36.     35.  The Debtors are authorized, empowered and directed to take all actions necessary to effectuate the relief granted in this Order in accordance with the Motion.

Dated:  _____, 2016
Houston, Texas

_____
THE HONORABLE DAVID R. JONES
UNITED STATES BANKRUPTCY JUDGE

| Summary report: Litéra® Change-Pro TDC 7.5.0.179 Document comparison done on 12/2/2016 11:37:00 AM | |
|---|---|
| **Style name:** Standard Pleading | |
| **Intelligent Table Comparison:** Active | |
| **Original DMS:** iw://SM-DMS02/Legal/10964438/1 | |
| **Modified DMS:** iw://SM-DMS02/Legal/10964438/2 | |
| **Changes:** | |
| Add | 3 |
| Delete | 1 |
| Move From | 0 |
| Move To | 0 |
| Table Insert | 0 |
| Table Delete | 0 |
| Table moves to | 0 |
| Table moves from | 0 |
| Embedded Graphics (Visio, ChemDraw, Images etc.) | 0 |
| Embedded Excel | 0 |
| Format changes | 0 |
| **Total Changes:** | 4 |