
Case 16-33590   Document 2481   Filed in TXSB on 08/15/18   Page 1 of 4

ENTERED
08/16/2018

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | CASE NO: 16-33590 |
| CJ HOLDING CO., *et al.*, | § | CHAPTER 11 |
| | § | (Jointly Administered) |
| Debtor(s). | § | David R. Jones |

**MEMORANDUM OPINION**
**(Docket No. 1733)**

Robert and Delia Nunez seek relief from the statutory discharge injunction provided under 11 U.S.C. § 524 as well as the injunction and releases provided in the confirmed plan to pursue pre-petition personal injury claims against C&J Well Services, Inc. ("C&J Well") and an employee solely for purposes of recovering available insurance proceeds. For the reasons set forth below, the Court grants the motion in part and denies the motion in part. A separate order consistent with this opinion will issue.

**Brief Factual Background**

On May 16, 2015, Mr. and Mrs. Nunez were injured in an accident involving a vehicle driven by Reece Horton, an employee of C&J Well. Mr. and Mrs. Nunez subsequently filed litigation against C&J Well, Mr. Horton and others in the 143rd Judicial District Court of Reeves County, Texas seeking millions of dollars in compensatory and other damages for their injuries (the "Litigation").

C&J Well filed a voluntary chapter 11 bankruptcy case on July 20, 2016 along with a number of affiliates. All cases were jointly administered under the instant case [Docket No. 32]. The deadline for filing proofs of claims in these cases was November 8, 2016 (the "Bar Date") [Docket No. 496].

In their schedules, the Debtors listed Mrs. Nunez as a creditor with a disputed, contingent claim in an unliquidated amount [Docket No. 327]. Mr. Nunez is not listed as a creditor.[1]

On September 28, 2016, a notice of the Bar Date was sent both to Mr. and Mrs. Nunez in care of their counsel, Bill Weinacht, The Weinacht Law Firm, P.O. Box 170, Pecos, TX 79772 [Docket No. 661]. Neither Mr. nor Mrs. Nunez filed a proof of claim.

On November 11, 2016, a copy of the plan solicitation materials, including notice of the hearing to consider confirmation of the Debtors' proposed plan or reorganization and a voting

---

[1] C&J Well alleges that Mr. Nunez sued both C&J Well and Mrs. Nunez solely in an attempt to manufacture venue in Reeves County, Texas. This issue is not before the Court and no opinion is expressed nor should any inference be drawn.

ballot was sent both to Mr. and Mrs. Nunez [Docket No. 793]. Neither Mr. nor Mrs. Nunez cast a vote, objected to the proposed plan or otherwise participated in the confirmation process.

The Court confirmed the Debtors' plan of reorganization by order entered December 16, 2016 [Docket No. 1057]. The confirmed plan became effective on January 6, 2017 [Docket No. 1157]. All claims held by Mr. and Mrs. Nunez are now discharged under 11 U.S.C. § 1141(d) and the express provisions of the confirmed plan. All further efforts by Mr. and Mrs. Nunez to recover from C&J Well or its property are expressly prohibited under 11 U.S.C. §§ 524(a)(2) and (3). Moreover, the confirmed plan contains both injunctive and exculpatory provisions that prevent the continued pursuit of any claims held by Mr. and Mrs. Nunez against C&J Well or its employees [Docket No. 1057].

On June 29, 2017, Mr. and Mrs. Nunez filed their motion for relief from the statutory discharge injunction under 11 U.S.C. § 524 as well as the injunction contained in the confirmed plan [Docket No. 1733]. Specifically, Mr. and Mrs. Nunez request authority to continue the Litigation against the C&J Well and Mr. Horton solely for the purpose of recovering proceeds from the Debtors' insurance policies [Docket No. 1733].

The Debtors filed their response to the Nunez motion on August 4, 2017 [Docket No. 1802]. In their response, the Debtors assert that Mr. and Mrs. Nunez are not entitled to the requested relief and that (i) any claims held by Mr. and Mrs. Nunez were discharged; and (ii) any claims against C&J Well or Mr. Horton held by Mr. and Mrs. Nunez were released under the specific terms of the confirmed plan.

The Court conducted a hearing on the Nunez motion on August 24, 2017 [Docket No. 1837]. During the hearing, the Debtors elicited testimony that the Debtors would incur substantial costs if the Litigation proceeded. At the conclusion of the hearing, the Court established a schedule for post-hearing briefing [Docket No. 1837].

On September 18, 2017, Mr. and Mrs. Nunez filed their post-hearing brief [Docket No. 1880]. In the brief, Mr. and Mrs. Nunez cited to various provisions of the applicable Liberty Mutual Insurance policy (the "Liberty Policy") [Docket No. 1880]. These cited provisions reflect that the Liberty Policy has a $1 million cap with a $1 million deductible [Docket No. 1880]. The brief further reflects that the Debtors have a $5 million self-insured retention above the Liberty Policy before a $10 million excess policy issued by Price Forbes becomes available [Docket No. 1880].

On September 27, 2017, the Debtors' filed their response to the Nunez post-hearing brief [Docket No. 1901]. Liberty Mutual Insurance Company ("Liberty") also filed its response to the Nunez post-hearing brief on September 27, 2017 [Docket No. 1900]. In its response, Liberty noted that it was holding the Debtors' cash in the amount of $5.8 million as security for any costs that it advanced with respect to the Litigation [Docket No. 1900].

On November 7, 2017, Mr. and Mrs. Nunez filed their reply to the Debtors' response to their post-hearing brief [Docket No. 1955].

### Jurisdiction and Authority

The Court has jurisdiction over this contested matter pursuant to 28 U.S.C. § 1334(a). Further, the Court has jurisdiction to interpret and enforce its own orders. This contested matter is a core proceeding arising under title 11 pursuant to 28 U.S.C. §§ 157(b)(2)(A), (L), and (O). The Court has constitutional authority to enter a final order in this contested matter under the Supreme Court's holding in *Stern v. Marshall*, 131 S.Ct. 2594 (2011).

### Analysis

The Court finds the resolution of the parties' dispute squarely encompassed within the Fifth Circuit's decision in *Houston v. Edgeworth (In re Edgeworth)*, 993 F.2d 51 (5th Cir. 1993). In *Edgeworth*, the Fifth Circuit held that 11 U.S.C. § 524 does not prohibit a creditor that failed to file a proof of claim from proceeding to prosecute litigation claims against a reorganized debtor solely for the purpose of collecting insurance proceeds. *Id.* at 54-55. The Fifth Circuit noted, however, that this exception to § 524 is not available if the debtor is required to incur substantial costs in the litigation. *Id.* at 54 (noting that "threats to [a debtor's] pocketbook might require a different result"). *See also Perez v. Cumberland Farms, Inc.*, 213 B.R. 622, 624 (D. Mass. 1997) (stating that any economic loss to the debtor would violate 11 U.S.C. § 524(a) but allowing litigation to proceed with a reimbursement obligation to the debtor).

The underlying tenet of the Fifth Circuit's holding is a balancing of the financial fresh start policy underlying the bankruptcy process with the limitation set forth in 11 U.S.C. § 524(e). *See Greiner v. Columbia Gas Transmission Corp. (In re Columbia Gas Transmission Corp.)*, 219 B.R. 716, 720 (S.D. West Va. 1998). The Court's analysis in *Jones v. Pilgrim's Pride, Inc.* is instructive on this issue. 741 F. Supp. 2d 1272 (N.D. Ala. 2010). In denying the plaintiff's request to pursue litigation claims solely for the purpose of collecting insurance proceeds, the *Pilgram's Pride* Court noted that there was effectively no primary insurance as the Debtor had a large self-insured retention. *Id.* at 1277-1278. *See also Columbia Gas Transmission Corp.*, 219 B.R. at 720; *DePippo v. Kmart Corp.*, 335 B.R. 290, 298 (S.D.N.Y. 2005)

The relevant facts are largely undisputed. Mr. and Mrs. Nunez admit that they did not file a proof of claim. No assertion is made that they are not bound by the terms of the confirmed plan in this case. Rather, Mr. and Mrs. Nunez argue that although the Liberty Policy has a $1 million deductible and that a $5 million self-insured retention exists before any proceeds of the excess policy are available to satisfy their claims, it is not clear that the Debtors will have to actually pay those amounts. In essence, Mr. and Mrs. Nunez argue that the *Edgeworth* exception should apply because the Debtors could choose to breach their contractual obligations and refuse to pay the $1 million deductible or the $5 million self-insured retention. The argument fails to address the fact that Liberty is holding the Debtor's cash as security for its performance.

The Court is convinced that this is the type of situation recognized by the *Edgeworth* Court. In this case, C&J Well is required to pay the first million, and five of the following six million in related expenses/recoveries. No legitimate argument exists that such circumstances would not frustrate C&J Well's discharge and the fresh start policy engrafted into the Bankruptcy Code.

Mr. and Mrs. Nunez also argue that the fact that the Debtors' relevant insurance agreements were assumed under the confirmed plan requires a different analysis. The Court disagrees. The *Edgeworth* balancing remains unchanged. *See In re Chemtura Corp.*, No. 09–11233–JLG, 2016 Bankr. LEXIS 4056, at *61-62 (Bankr. S.D.N.Y. Nov. 23, 2016).

Applying *Edgeworth*, the Court will deny the Nunez motion as to C&J Well and to Mr. Horton solely in his capacity as an employee for which C&J Well would have vicarious liability. With respect to any claims against Mr. Horton individually, outside of his capacity as an employee, and any personal insurance or other assets that he may have, the motion is granted.

An order consistent with this opinion will separately issue.

**SIGNED: August 15, 2018.**

_____
**DAVID R. JONES**
**UNITED STATES BANKRUPTCY JUDGE**